## JOSIAH L. FOSTER *vs.* CHARLES A. ROPES.

In an action for fish sold and delivered on a certain day, it appeared that the plaintiff on said day agreed to sell the defendant a specified lot of fish, to be dried and weighed by the plaintiff before delivery. The judge ruled that the plaintiff could not recover unless the jury were satisfied that it was the intention of the parties that the sale should be completed on said day, and the title then pass to the defendant. There was no evidence of such intention. *Held*, that the ruling was calculated to mislead the jury, and an exception thereto should be sustained.

In an action for fish sold and delivered, it appeared that the plaintiff agreed on a certain day to sell the defendant a specified lot of fish by weight, the fish to be dried and weighed by the plaintiff before delivery. The plaintiff testified that he understood that the fish were at his risk till weighed and delivered, but that he considered the fish the defendant's from the day they were sold; the defendant, in testifying, said, "I bought the fish" on said day; it appeared that the plaintiff wrote to the defendant that he should weigh the fish he had "sold" him, and the defendant wrote refusing to receive them on the ground that he had bought merchantable fish, and that these were not so. *Held*, that this evidence would not justify the jury in finding that it was the intention of the parties to pass the title of the goods before delivery.

A bill of exceptions, after setting forth certain evidence, stated that " upon all the evidence " a party asked for certain rulings, which were refused. *Held*, that it must be assumed that all the material evidence bearing upon the question raised was set forth.

CONTRACT for the price of 775 quintals of codfish, sold and delivered by the plaintiff to the defendant on April 15, 1870. The answer denied the sale, and set up a warranty of soundness, and a breach thereof. Trial in the Superior Court, before *Brigham*, C. J., who, after a verdict for the plaintiff, allowed the following bill of exceptions :

" There was evidence tending to prove that the defendant on April 15, 1870, visited the counting-room of the plaintiff in Beverly, to purchase a fare of cod fish to ship to New York ; that he so told the plaintiff, who informed him that he had a fare by the schooner J. L. Foster ; that the defendant then went to the plaintiff's yard to see them ; that he there saw the fish, and some of them were taken down and shown to him by the plaintiff's foreman ; that the fish were piled in two houses in two piles of about equal size, in all about 800 quintals ; that he then returned to the counting-room, and after some conversation in regard to the soundness and condition of the fish, as was testified to by him, but which the plaintiff denied, and which is not material in this bill of exceptions, he agreed to buy the fish at $6 per quintal in cash, (which by the usage of the trade means in thirty days from delivery,) one half to be thrown (that is, put on the flakes to be dried) for half a day or more, at once, or on the first fair day, and weighed at Beverly and by him there received and carted to Salem ; the other half to be thrown in the course of ten days, and to be weighed and carted as the others.

" The defendant testified that he told the plaintiff he wanted a fare of fish to ship to New York ; the plaintiff testified that nothing was said by the defendant as to what he wanted the fish for, but he presumed he knew that the defendant was going to send them to New York, and sold them for that purpose, as fit in quality for the New York market. The next day, which was Saturday, the 16th, one half the fish, or 400 quintals, were thrown. The weather during the next ten days was bad and unsuitable for carting fish ; on April 26 the defendant notified the

plaintiff's foreman that he would take the first lot the next day; and on April 27 they were weighed in Beverly, and carted to Salem by a teamster sent by the defendant for that purpose, and were shipped for New York on April 28. No question was made at the trial that there was any unreasonable delay on the part of the defendant in taking the first lot of the fish. The plaintiff testified that he understood that the fish were at his risk till weighed and delivered to the defendant, and that he considered the fish the defendant's from the day they were sold, as he could not sell them. The fish were delivered in two lots. The plaintiff testified that he did not know that both lots passed to the defendant at the delivery of the first lot.

" It was contended by the plaintiff that the defendant in his testimony used the words ' I bought the fish on the 15th,' and it was argued to the jury that he so testified. Whether or not there was an absolute sale of the fish on that day, and whether or not the sale was consummated on that day, was in issue, and was a question submitted to the jury on the whole evidence of the transaction and conversations of that day between the parties.

The defendant wrote to the plaintiff and to George B. Foster, the plaintiff's son, the following letters: " Salem, May 6, 1870. Mr. George B. Foster, Dear Sir: I regret to say that owing to the fish last had of you not being sound or strong, I cannot sell them in New York, and shall have to bring them back. I write to say that if opportunity offers to sell the balance now with you, do not keep them for me. I will see you in a day or two. Yours truly, Charles A. Ropes." " Salem, May 7, 1870. Mr. Josiah L. Foster, Dear Sir: I wrote your son George yesterday, that he need not lose opportunity to sell balance of the fare fish, which I had taken part of. I regret to say that my to-day's letters from New York advise me that the fish cannot be sold there; parties who had bought and got them in store notifying my brother that they must send them back aboard the vessel. What disposition shall I make of the fish? They are so strong and unmerchantable that I doubt selling them there at any price. Not hearing from you Monday, they will be shipped back to Salem at your risk and subject to your order. Respectfully yours, Charles A. Ropes. My brothers write that they cannot sell them selected."

" On May 14, 1870, the plaintiff delivered to the defendant the following letter: ' May 14, 1870. Mr. Charles A. Ropes, Dear Sir: We shall weigh off the residue of the fare of fish of the **J. L.** Foster, which we sold to you a short time since, on Monday next, if a fair day ; otherwise on the next fair day. This is to notify you to be present and see to the correctness of the weight at the fish-house, where they are, and were bought by you. The fish are there at your risk, and yours. Very truly yours, Josiah L. Foster.' And on the same day the defendant delivered to the plaintiff the following letter: ' Salem, May 14, 1870. Mr. Josiah L. Foster, Dear Sir: I am in receipt of yours of this date, no tifying me that balance of the fare of fish by J. L. Foster, will be weighed off on Monday, and all at my risk. Having bought sound, merchantable fish of you, and they not being so, I shall decline to receive them. I have already notified you of my intention to return those shipped by Hero, and that they are now on your risk and account. She is now on the passage, and I will notify you of her arrival. Yours respectfully, Charles A. Ropes.'

" On May 17, the defendant delivered to the plaintiff the following letter: ' Salem, May 17, 1870. Mr. Josiah L. Foster, Dear Sir: Having notified you yesterday of the arrival of the Hero here, with the fish on board, rejected and returned from New York, and you having refused to receive them, this is to notify you that I must discharge said fish, first good day, and dispose of them for whom it concerns, on the best terms I can. Respectfully yours, Charles A. Ropes.' And on May 24 the plaintiff delivered to the defendant the following letter: ' May 24, 1870. Charles A. Ropes, Esq., Dear Sir: On the 15th day of April last past you purchased of me the fare of fish of the schooner **J. L.** Foster, at my fish-house in Beverly, consisting of 775 quintals at $6 per quintal, and took away 400 quintals of them. The other 375 quintals are now remaining in said fish-house, your property, and subject to your order and disposal. A reasonable time for your taking them away has already elapsed, and I shall charge you storage from this date ; and unless you take them away as soon as may be, which you are hereby requested to do, **I** shall make sale of the fish at the fish-house at your expense, on

your account and for your benefit. And I hereby demand payments for the said 775 quintals of fish at the aforesaid agreed rate per quintal. Very truly yours, Josiah L. Foster.'

" Other letters passed between the parties. On May 16, being Monday, the remainder of the fare of the J. L. Foster, amounting to 375 quintals, was weighed off at the fish-house where they were.

" Upon all the evidence, the defendant contended and asked the judge to rule that there was no sale of the fish on April 15, and that the plaintiff could not recover for the fish in Beverly as for fish sold and delivered, as set forth in his declaration. The judge ruled that if anything remained to be done by the plaintiff to the fish after the agreement on April 15, before they passed into the hands of the defendant, the delivery was not complete, and the plaintiff could not recover for the fish in Beverly, unless the jury were satisfied that it was the intention and agreement of the parties that the sale should be completed on April 15, and the title then pass to the defendant. The defendant contended that there was no evidence of any such agreement, but the judge allowed the case to go to the jury upon the above instruction, to which the defendant excepts.

" The questions of whether or not the plaintiff made a warranty of the soundness of the fish, whether the defendant relied upon such warranty, and whether there was a breach of such warranty, were in issue and passed upon by the jury at the trial, upon instructions not excepted to.

" Certain specific questions were submitted to the jury, which, with the answers of the jury, were as follows : ' Is there a general usage known and acted upon by persons engaged in buying and selling salted codfish, if such fish are sold at the price of sound fish, and afterward prove to have been unsound at the time of sale, to allow the buyer to return them to the seller, or to make him an allowance for such unsoundness.' Answer : ' No.' ' Was it the intention of the parties that the sale should be complete when the bargain of sale was made, or when the fish had been thrown and weighed for delivery ?' Answer : ' At time of sale.' "

*J. W. Perry,* ( *W. C. Endicott* with him,) for the defendant.

*J. C. Perkins*, for the plaintiff.

COLT, J.   Under the instructions given, the jury were allowed to find that the sale of all the fish was completed, so as to pass the title to the defendant, on April 15, the day when the contract of sale was entered into.   This action is to recover the price of the whole, as for goods sold and delivered.

The defendant asked the court to rule, upon all the evidence, that there was no sale at that time, and that, under a count for goods sold and delivered, the plaintiff could not recover for the fish which remained in Beverly after the 400 quintals were taken away by him.   This ruling was refused, and the jury were told, in substance, that the plaintiff could not recover for the fish in Beverly, if anything remained to be done to them by the plaintiff after the agreement of April 15, unless they were satisfied that it was the intention and agreement of the parties that the sale should be complete and that the title should pass at that time.   The point made by the defendant is, that the last part of this instruction was not supported by the evidence, and was calculated to prejudice his rights, even if correct as an abstract proposition, and as applicable to a different state of facts ; and we are of opinion that the objection is well taken.

In the sale of personal property, the general rule of law is, that when, by the terms of the contract, the seller agrees to do anything for the purpose of putting the property into a state in which the buyer is bound to accept it, or into a condition to be delivered, the title will remain in him until he has performed the agreement in this respect.   In *Rugg* v. *Minett*, 11 East, 210, where a quantity of turpentine in casks was sold in lots at so much per hundred weight, it was held that the property had passed in those lots only in which the casks had been filled up as agreed, because as to them only had everything been done by the sellers, which lay upon them, to put the goods in a deliverable state.   And see also *Acraman* v. *Morrice*, 8 C. B. 449 ; *Morse* v. *Sherman*, 106 Mass. 430.

This general rule will not prevail, where, by the terms of the agreement, the title is to vest immediately in the buyer, notwithstanding something remains to be done to the goods by the seller

after delivery. Thus in *Riddle* v. *Varnum*, 20 Pick. 280, it was held that the jury, where there was evidence of such intention, might infer a delivery to the buyer sufficient to vest the title, although something remained to be done by the seller; while the general doctrine above stated, in cases where there is no evidence of intention to complete the sale and pass the title, is fully affirmed. And in *Turley* v. *Bates*, 2 H. & C. 200, it was said that the court must look to the intention as drawn from the terms of the contract, in order to determine whether title to the property immediately passed. *Young* v. *Matthews*, L. R. 2 C. P. 127. Story on Sales, § 298 *a*.

In all cases, however, the intention of the parties as to the time when the title is to pass can be ascertained only from the terms of the agreement, as expressed in the language and conduct of the parties, and as applied to known usage and the subject matter. It must be manifested at the time the bargain is made. The rights of the parties under the contract cannot be affected by their undisclosed purposes, or by their understanding of its legal effect.

In the case at bar, it was not in dispute at the trial, that, by the contract of April 15, the fish was to be put on flakes and further dried by the plaintiff, and afterwards weighed by him for the purpose of ascertaining the quantity and price. This was to be done for the purpose of fitting the goods for delivery. By the general rule, therefore, the property not actually taken away by the defendant remained in the plaintiff, unless there is evidence which would justify the jury in finding that by further agreement, notwithstanding this feature of the contract, the title was to pass immediately to the defendant. We can find no evidence of such agreement in the case stated. All that was said and done on April 15 is consistent with an intention to leave the title in the plaintiff until the fish were fully cured, weighed and delivered, according to the general rule of law; and there is nothing to vary the application of that rule. The letters subsequently written by the defendant do not seem to us to contain anything which amounts to an admission of such an agreement; nor were the statements in the letters written to him by the plaintiff of such a character that his silence in regard to them can be construed into an implied admission.

The plaintiff further claimed, at the argument, that the bill of exceptions itself shows that all the evidence bearing on this point is not reported. But the record, after reciting the evidence and its bearing on the point, states that " upon all the evidence " the ruling asked for by the defendant was refused. This means that the purport of all the evidence in the case, bearing upon the point raised, is stated; and implies that nothing is omitted which the judge deemed material.

The instructions given upon the question of the delivery of the fish which remained in Beverly, not being such as the defendant upon his request was entitled to, a new trial must be had unless the plaintiff remits, and takes judgment only for the 400 quintals, at the price agreed, which were actually taken by him. And in case of a new trial, as the alleged breach of warranty has been found for the plaintiff on the issues already tried, and no other question is made as to the defendant's liability for the goods actually removed, the trial must be confined to the single point raised by these exceptions.        *Exceptions sustained.*