## JOHN TOWNSEND *vs.* EDWARD HARGRAVES.

Suffolk. November 13, 1874. March 2. — Sept. 17, 1875.

In an action on a common count for goods sold and delivered, there was evidence that the plaintiff had a lot of wool in bales at the storehouse of W.; that the defendant agreed to buy the wool at a price named per pound, taking it at the weights stated in the invoice by which the plaintiff had bought it ; that the parties had had previous dealings in wool, and that the plaintiff had been in the habit of leaving an order with a carrier to call for wool sold to the defendant; that he started to leave such an order in the present instance, but was requested to wait to see if arrangements could not be made to get it off sooner ; that the next day the plaintiff told W. in the presence of the defendant that the wool was the defendant's ; that the defendant spoke of getting a horse and wagon to take some of the wool, and the plaintiff said that he was going away and the defendant had better get W. to ship the wool; that shortly after this W. offered to cart away such of the wool as the defendant was in a hurry for, and the defendant gave him instructions about this and also told him to send a part by his own wagons and the rest by the carrier, that W. sent part by his own wagons and left an order for the carrier to call for a part of the rest; that the carrier took away part and the rest was destroyed by fire some days afterwards in W.'s storehouse. The jury were instructed that if it was a part of the contract that the plaintiff should deliver the goods to the carrier or leave an order for the carrier to come and get the goods, and this was not done, the contract was not completed ; but, if it was agreed by the parties that W. was to attend to the delivery, that relieved the plaintiff, although W. left an order with the carrier for only a part of the goods. *Held*, that there was evidence sufficient to warrant the jury in finding that there was a completed contract of sale between the parties, and that the instructions given were sufficiently favorable to the defendant. *Held, also,* that the evidence was sufficient to warrant the jury in finding that W. undertook to deal with the wool for the defendant, and that this was a sufficient acceptance and receipt to take the case out of the statute of frauds.

Instructions to the jury, which are not reported in a bill of exception, are presumed to have been apt and sufficient, and no exception lies, unless the specific instructions requested by the excepting party should have been given in whole or in part.

In an action to recover the price of goods sold, being more than fifty dollars, there was evidence that it was part of the contract that the seller was to deliver all the goods to a railroad company for transportation to the mill of the purchaser, that some of the goods were so delivered and were either in transit to the purchaser or already arrived at his mill, when the rest were destroyed by fire in the warehouse, where they were at the time of the sale. The defendant requested the judge to rule that if by the terms of the contract the plaintiff was to ship the goods to the defendant at the latter's expense, by the railroad company, and the plaintiff did thus ship part of them, y ; such delivery, to the railroad company to be forwarded to the defendant, did not operate to take the contract out of the statute of frauds even as to the goods delivered to the railroad company, and the subsequent acceptance by the defendant of the goods so shipped by the railroad company to him did not operate to take out of the statute of frauds the contract as to any part of the

goods not so delivered to the railroad company. *Held*, that this request was rightly refused.

The statute of frauds (Gen. Sts. c. 105, § 5) affects the remedy only and not the validity of the contract, and if there is a completed oral contract of sale of goods, the acceptance and receipt of part of the goods by the purchaser takes the case out of the statute, although such acceptance and receipt are after the rest of the goods are destroyed by fire while in the hands of the seller or his agent.

CONTRACT to recover the price of thirty-seven bales of wool. The declaration contained two counts : one upon an account annexed, and the other a common count for goods sold, and interest thereon. The answer admitted the defendant's liability for eighteen of the bales, valued at $3889.08, and, as to the rest, denied the allegations of the declaration and pleaded the statute of frauds. Trial in the Superior Court, before *Putnam*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff's evidence tended to prove the following facts : The plaintiff, on November 1, 1872, was the owner of three distinct lots of wool, the first consisting of twenty-two bales, of the grades known as " extra " and " super "; the second of fifteen bales, fourteen of them of the grade known as No. 1, and one bale of black wool ; and the third of twenty-eight bales of an inferior quality , each bale being numbered and stamped with its weight. He had in his office in Boston samples of the three lots, all of which were in the store of one Williams, a broker in wool, who took them on storage, but who had given no storage receipt. On that day, the defendant, who resided at Great Falls, New Hampshire, and had a woollen mill in Maine, the route to which was over the line of the Eastern railroad, by which he was in the habit of receiving the wool to be consumed at the mill, called upon the plaintiff at his office, to purchase wool, inspected samples, and agreed by parol to take the first two lots of the plaintiff's wool, represented by two of the samples, by the lot, at the rate of fifty-four cents per pound for the first, and forty-four cents per pound for the second, those being the prices at which the plaintiff offered them, the terms of the sale being that the defendant should give his note for the amount on four months at seven per cent. interest. The quantity and total price of the wool was not then definitely stated, but the defendant agreed to take the wool at the weight given in the invoices by which the plaintiff had bought it, being the weights stamped on the bales. The wool thus on storage had .

never been seen by the plaintiff, he having bought it by sample at invoice weights, and was never afterward seen by him, nor shown to the defendant at the time; but the plaintiff at the time of the purchase told the defendant where it was.

The plaintiff and the defendant had been in the habit of dealing together before, and the defendant had a subsisting arrangement with the Eastern Railroad Company to do his freighting for a certain price. It was the custom of the company, on receipt of an order, to send for freight in Boston to be transported over its railroad, and in accordance with this custom, it had been its habit on such notice to send for wool purchased by the defendant in Boston on previous occasions, and to charge him with the cost of carting it from the warehouse in Boston to the depot, which he had always paid, this charge being in addition to the charge for freight. The plaintiff had been in the habit of leaving an order with the company to call for wool sold by him to the defendant, and, as he testified, started immediately after the sale to leave such an order; but the defendant said, "Wait till to-morrow morning, and see if we cannot get off a little of it," meaning thereby to try to get it off sooner than the railroad wagons would take it.

The next morning the plaintiff and the defendant met Williams in the street, and the plaintiff, in the defendant's presence, told Williams that he had sold all the wool in his warehouse; that he had sold the thirty-seven bales to the defendant, and the twenty-eight bales to one Tibbetts, adding "It is their wool." Williams asked whether the defendant wanted his wool weighed, and the plaintiff answered that he took it by invoice weights. The defendant in his testimony denied that any such interview took place in his presence.

Afterward, on the same day, the plaintiff and the defendant went to the plaintiff's office, where the defendant spoke of getting a horse and wagon to take a little of the wool, and the plaintiff replied that this was impossible on account of the horse disease, adding that he was going away the next week, and that the defendant had better get Williams to ship his wool if he wanted it shipped. The defendant in his testimony denied that this conversation took place.

Shortly after this conversation Williams came in, and asked the defendant if he was in a hurry for the wool, and was told by him that he was in a hurry for a portion of it; Williams offered to furnish wagons himself to cart to the Eastern Railroad Company such of the wool as the defendant was in a hurry for; and thereupon the defendant gave him instructions about it, telling him to send a part of it by his wagons and charge the cartage to him, and the balance by the Eastern Railroad Company. After this the plaintiff himself did nothing in regard to the shipment of the wool. Williams, on or about November 4, caused six bales of the wool to be sent by his own wagon to the Eastern Railroad Company's freight house, in Boston, for the defendant, and caused an order to be left with the Eastern Railroad Company to call at his store for ten bales more of the wool. This order was given to the Eastern Railroad Company on or about November 5, but was not executed until November 9, when twelve bales were taken by the railroad company, and the remaining nineteen bales not taken away, for which no order was given to the railroad company, were burned during the night following in the store of Williams, where they had remained since the agreement was made. Williams reported by letter to the defendant the steps he had taken in reference to forwarding the wool. The plaintiff's evidence also tended to show that the defendant received the six bales on or before the night of November 8, at his mill, and the twelve bales subsequently.

The plaintiff testified that on the morning of November 9, he saw the defendant at his residence, in New Hampshire; that the defendant said he had received the six bales, and that twelve bales more were on their way, and that he had received the plaintiff's bill for the whole wool, which was the bill in suit; that the plaintiff asked him if the bill was right, and said he wanted his note for the amount of the bill by the following Wednesday; that the defendant replied that he would either send it or bring it by that time. The defendant denied this conversation, and testified that at the time of the fire, none of the eighteen bales shipped to him by the railroad before the fire, had, to his knowledge, arrived at his mill or been seen by him. This fact was not conceded by the plaintiff.

The judge, in charging the jury upon that part of the defence which denied that the contract as to delivery was fulfilled by the plaintiff, or any one in his behalf, instructed the jury as follows : " If it was a part of the contract that the plaintiff, before it should be considered as a completed contract between them, was to deliver these goods to the Eastern Railroad Company or leave an order with it to come and take them, and it was not done, it is not a compliance with the contract. The claim of the plaintiff is, that by the consent of the defendant, it was understood between them that Williams, who was the storekeeper of the wool, was to take and did take control of that part of it, and if he did not give the order to the Eastern Railroad, or only gave an order for ten bales, that is not the fault of the plaintiff. That would be so, although it might be understood that an order was to be left with the Eastern Railroad Company to take this wool, or to come and take this wool, so that a delivery to it would be considered as a delivery to the consignee, as between these parties ; still if, at the time, it was understood that Williams was to attend to and he accepted that part of the responsibility, that relieved the plaintiff ; and if Williams did not see fit to give this order to the Eastern Railroad Company, or only gave an order for ten bales instead of the whole, then so far as the plaintiff is concerned, and upon the first question involved in the case, whether the plaintiff did all that was necessary to be done under the terms of the contract, as between him and the defendant, the plaintiff would be relieved. So that the first inquiry simply will be whether the plaintiff did do all that he was obligated to do by the terms of the contract. You have the statement of Williams and of these parties of these various conversations, and you are to say whether that was the understanding at the time or not; if it was, although Williams might not have done it, the plaintiff is relieved from doing it, and the defendant would be liable. The whole question, so far as that branch of the case is concerned, is this : If it was a part of the contract that the plaintiff was to give this order to the Eastern Railroad Company he should do so, unless it was agreed between the plaintiff and the defendant that that responsibility should devolve upon Williams ; and if so, that relieved the plaintiff."

The judge was requested by the defendant to instruct the jury as follows : "If the plaintiff, by the contract of sale made on Friday, November 1, 1872, was to forward the goods to the defendant at once or in the early part of the week following, and failed so to do as to a part of the goods, by reason whereof such part was destroyed by fire on the night of November 9, 1872, the plaintiff cannot recover for the part so destroyed by fire ; and the acceptance by the defendant of the part actually sent according to contract would not in law operate as an acceptance also of the part not sent nor delivered to the carrier, and in this respect it is not material whether the goods had then been destroyed or not."

The judge read the above prayer for instructions to the jury, and remarked : " I have substantially given this, and I do give it substantially ; if it was part of the plaintiff's agreement and contract to forward them at once or in the early part of the next week, and he failed to do so, he cannot recover for those destroyed by fire, unless the responsibility for doing that, with the consent of the defendant, devolved upon Williams."

Thereupon the defendant's counsel addressed the judge in the language following : " The charge is, if the arrangement which is testified to by the plaintiff was made by Williams, by which, as it is contended, the defendant agreed to look to Williams for the delivery, that the plaintiff may recover. I ask your honor to rule that the defendant is not liable, unless he agreed to accept the goods while in the hands of Williams ; unless he agreed to accept the goods from Williams, and take them in his, Williams's, warehouse."

The judge replied to this as follows : " If the defendant knew they were in Williams's warehouse and agreed that Williams should attend to the delivery of them, it seems to me he takes Williams as his agent for that purpose."

The defendant also contended and asked the judge to rule as follows :

" 1. If by the terms of the contract, the plaintiff was to ship the wool to the defendant, residing in New Hampshire, by the Eastern Railroad Company, at the expense of the defendant, and the plaintiff did thus ship or send part of the wool, yet such delivery of wool to the Eastern Railroad Company to be forwarded to the defendant, did not operate to take the contract out of the

statute of frauds even as to the goods delivered to the Eastern Railroad Company; and the subsequent acceptance by the defendant of the wool so shipped by the Eastern Railroad Company to him, did not operate to take out of the statute of frauds the contract as to any part of the wool not so delivered to the Eastern Railroad Company.

" 2. The acceptance by the defendant of the wool shipped to him before the fire, and received by him after the fire, did not make him liable as for an acceptance of the wool which had been destroyed by the fire ; but such acceptance of the part sent did not operate upon the contract of sale to render it valid retrospectively, nor render the defendant liable to pay for any goods not at that time capable of being delivered to the defendant, meaning at the time of such acceptance.

" 3. The plaintiff cannot maintain this action for the price of the nineteen bales of wool not delivered to the carrier, unless the jury shall be satisfied that the wool delivered to the carrier for the defendant had been actually received and accepted by the defendant before the fire occurred ; and the burden of proof on this is upon the plaintiff ; *i. e.* unless the jury are satisfied that the nineteen bales of wool were in existence at the time of the receipt and acceptance by defendant of the wool actually shipped to him, then the plaintiff cannot recover."

The judge declined to give these instructions as not conformable to law. It was not contended by the defendant that no instructions were given by the judge, applicable to the questions presented in the foregoing prayers for instructions. The jury found a verdict for the plaintiff for $7962.75, being the whole amount claimed ; and to the foregoing rulings and refusals to rule as requested, the defendant alleged exceptions.

The case was argued in November, 1874, and reargued in March, 1875.

*F. A. Brooks*, for the defendant.

*M. Storey*, for the plaintiff.

COLT, J. The plaintiff relied on an oral contract of sale to the defendant of a quantity of wool in bales then in Boston, and held in store by one Williams. The sale was by sample at the invoice weight for a given price per pound, and the bales were specifically designated and appropriated by the terms of the contract.

At the time of the great fire of November 9, 1872, a part of the wool had been sent to the railroad station in Boston, and was either there or at the defendant's mill in Maine, or in transit to the mill, and a part remained and was burned in the storehouse of Williams. The defendant denies his liability for the wool burned.

He contends, first, that the contract was not a completed contract of sale, because something connected with the shipment or delivery of the wool remained to be done by the plaintiff. But the instructions upon this point were sufficiently favorable to the defendant, and upon evidence which, though conflicting, was sufficient to warrant the finding; the jury must have found that nothing remained to be done on the part of the seller in the way of ascertaining, appropriating or delivering the property. It is well settled that by such a contract, independently of the statute of frauds, the property immediately vests in the buyer, and a right to the price in the seller, unless it can be shown that such was not the intention of the parties. *Morse* v. *Sherman,* 106 Mass. 430. *Foster* v. *Ropes,* 111 Mass. 10. *Haskins* v. *Warren,* 115 Mass. 514. *Goddard* v. *Binney,* Ib. 450.

The defendant next relies upon the statute of frauds set up in his answer, and contends that there was no acceptance or receipt of any part of the wool sufficient to take the case out of its provisions as to the part burned.

There was, however, evidence which justified the jury in finding that the storekeeper Williams, after being notified of the sale by both parties, and of the fact that the property belonged to the defendant, undertook at his request to deal with and hold it for him. Such an arrangement the jury may have found constituted a sufficient acceptance and receipt to make the contract " good and valid." It is well settled that the warehouseman in such case becomes the agent of the buyer and holds possession for his principal. *Cushing* v. *Breed,* 14 Allen, 376. *Boardman* v. *Spooner,* 13 Allen, 353. *Hatch* v. *Bayley,* 12 Cush. 27. Browne St. Frauds, § 318. But the evidence upon this point was conflicting, and some of it tended to prove that there was no acceptance of the wool or any part of it through the agency of Williams, or until after the fire. It cannot be certainly known that the verdict was not founded upon an acceptance by the defendant at

his mill in Maine, after the fire, of a part of the wool which had been sent on by railroad.

The instructions given by the court applicable to this aspect of the case were not excepted to, and are not reported. It is to be presumed that they were apt and sufficient, unless the specific instructions requested by the defendant should have been given in whole or in part ; and that is the remaining question.

The first two instructions requested were designed to support the statute defence, by avoiding the legal effect of the alleged acceptance, at the mill, of part of the wool. The acceptance referred to is that which the statute requires to give validity to the contract. It must be with intention to perform the whole contract and assert the buyer's ownership under it, but it is sufficient if it be of part of the goods only. Such an acceptance implies the existence of a completed contract, sufficient to pass the title, which is not to be confounded with that actual transfer of possession necessary to defeat the vendor's lien or his right of stoppage *in transitu*, or to show an actual receipt under the statute. *Morse* v. *Sherman*, cited above. Browne St. Frauds, § 317.

The first request in all its parts is to be taken together and treated as one ; the proposition that delivery of part to the Eastern Railroad Company would not satisfy the statute of frauds, even as to that part, being preliminary only, and for the purpose of leading up to the main proposition in regard to the subsequent acceptance of such part.

The judge properly declined to rule that an acceptance, as thus defined, of part of the wool would not operate to take the contract out of the statute, as to the part which the plaintiff had not sent, although by the terms of the contract the seller was to ship it all by railroad at the defendant's expense.

In the second request the judge was asked distinctly to rule that an acceptance of part of the wool would not operate upon the contract to render it valid retrospectively, or make the defendant liable to pay for that which had been destroyed by fire. This presents the question whether the date of the acceptance or the date of the agreement will be treated, as between the parties, as the time when the contract was made, and the risk of loss of the goods was cast on the buyer. No direct adjudication of this precise point is cited, if we except a New York case in which it

seems to be held, in a *per curiam* opinion, that a loss which hap-pens after the original agreement and before the acceptance re-quired by the statute, must fall on the purchaser.    *Vincent* v. *Germond*, 11 Johns. 283.

The decision of it depends upon the construction to be given to that part of the statute applicable to sales of personal property, which is incorporated in the Gen. Sts. *c.* 105, § 5, and follows, with slight variation, the words of the seventeenth section of the English statute.

The purpose of this celebrated enactment, as declared in the preamble and gathered from all its provisions, is to prevent fraud and falsehood, by requiring a party, who seeks to enforce an oral contract in court, to produce, as additional evidence, some written memorandum signed by the party sought to be charged, or proof of some act confirmatory of the contract relied on.    It does not prohibit such contract.    It does not declare that it shall be void or illegal, unless certain formalities are observed.    If executed, the effect of its performance on the rights of the parties is not changed, and the consideration may be recovered.    *Stone* v. *Dennison*, 13 Pick. 1.    *Basford* v. *Pearson*, 9 Allen, 387.    *Nutting* v. *Dickinson*, 8 Allen, 540.    The memorandum required is the mem-orandum of only one of the parties ; the alternative acts of the seventeenth section proceed from one only ; they presuppose a contract, and are in affirmance or partial execution of it ; they are not essential to its existence ; need not be contemporaneous, and are not prescribed elements in its formation. It is declared in the fourth section that no action shall be brought upon the promises therein named, unless some memorandum of the agreement shall be in writing ; and in the seventeenth that no contract for the sale of goods " shall be allowed to be good," or, as in our statute, " shall be good and valid," unless the buyer accepts and receives part or gives earnest, or there is some memorandum signed by the parties to be charged, or, as in our statute, by the party to be charged.    It is true there is difference in phraseology in these sections ; but in view of the policy of the enactment, and the ne-cessity of giving consistency to all its parts, this difference cannot be held to change the force and effect of the two sections.    " Al-lowed to be good " means good for the purpose of a recovery under i⁺ ; and the clause in the last part of the latter section

which requires the memorandum to be signed by the party or parties to be charged, implies that the validity intended is that which will support an action on the contract. We find no case in which it is distinctly and authoritatively held otherwise. See *Leroux* v. *Brown*, 12 C. B. 801; *Carrington* v. *Roots*, 2 M. & W. 248; *Reade* v. *Lamb*, 6 Exch. 130. Browne St. Frauds, §§ 115, 136.

With reference to the change in our statute by the use of the words "good and valid," which first appears in the Rev. Sts. *c.* 74, § 4, it is enough to say that the provincial statute of 1692, *c.* 15, § 7, and the St. of 1788, *c.* 16, § 2, follow the precise words of the English statute; and the commissioners on the Rev. Sts. in their report, p. 107, declare that they intend to retain the well known and familiar phraseology of the old statute, which has received judicial construction. *Tisdale* v. *Harris*, 20 Pick. 9, 12. It is apparent that the Legislature of this state did not intend to change the meaning of the original provision.

In carrying out its purpose, the statute only affects the modes of proof as to all contracts within it. If a memorandum or proof of any of the alternative requirements peculiar to the seventeenth section be furnished; if acceptance and actual receipt of part be shown; then the oral contract, as proved by the other evidence, is established with all the consequences which the common law attaches to it. If it be a completed contract according to common law rules, then, as between the parties at least, the property vests in the purchaser, and a right to the price in the seller, as soon as it is made, subject only to the seller's lien and right of stoppage *in transitu.*

Many points decided in the modern cases support by the strongest implication the construction here given. Thus, if one party has signed the memorandum, the contract can be enforced against him, though not against the other, — showing that the promise of the other is not wholly void, because it affords a good and valid consideration to support the promise which by reason of the memorandum may be enforced. *Reuss* v. *Picksley*, L. R. 1 Ex. 342.

The memorandum is sufficient if it be only a letter written by the party to his own agent; or an entry or record in his own books; or even if it contain an express repudiation of the con-

tract. And this because it is evidence of, but does not go to make the contract. *Gibson* v. *Holland*, L. R. 1 C. P. 1. *Buxton* v. *Rust*, L. R. 7 Ex. 1, 279. *Allen* v. *Bennet*, 3 Taunt. 169. *Tufts* v. *Plymouth Gold Mining Co.* 14 Allen, 407. *Argus Co.* v. *Albany*, 55 N. Y. 495.

A creditor, receiving payment from his debtor, without any direction as to its application, may apply it to a debt upon which no action can be maintained under the statute. *Haynes* v. *Nice*, 100 Mass. 327.

The contract is treated as a subsisting valid contract when it comes in question between other parties for purposes other than a recovery upon it. Hence the statute cannot be used to charge a trustee, who may set up against his debt to the principal defendant a verbal promise within the statute to pay the defendant's debt to another for a greater amount. *Cahill* v. *Bigelow*, 18 Pick. 369. And a guarantor may recover of his principal a debt paid upon an unwritten guaranty. *Beal* v. *Brown*, 13 Allen, 114.

On the ground that the statute affects the remedy and not the validity of the contract, it has been held that an oral contract, good by the law of the place where made, will not be enforced in the courts of a country where the statute prevails. *Leroux* v. *Brown*, 12 C. B. 801. The defendant may always waive its protection, and the court will not interpose the defence. *Middlesex Co.* v. *Osgood*, 4 Gray, 447. And, except that the statute provides that no action shall be brought, there would be no good reason to hold that a memorandum signed, or an act of acceptance proved, at any time before the trial would not be sufficient. *Bill* v. *Bament*, 9 M. & W. 36. *Tisdale* v. *Harris*, 20 Pick. 9.

In a recent case in the Queen's Bench, a memorandum in writing made by the defendant, after the goods had been delivered to a carrier and been totally lost at sea while in his hands, was held sufficient to take the case out of the statute, and no notice is taken of the fact that the goods were not in existence when the memorandum was furnished. *Leather Cloth Co.* v. *Hieronimus*, L. R. 10 Q. B. 140.

In the case of *Marsh* v. *Hyde*, 3 Gray, 331, relied on by the defendant, although there are some inconsistent expressions in the opinion, the general course of reasoning supports this result. The facts in that case showed a completed sale by oral agreement,

with an acceptance and receipt of part, which was held, although subsequent in point of time to the original contract, to take the case out of the statute. The point decided is not in conflict with the law here stated.

The case of *Stockdale* v. *Dunlop*, 6 M. & W. 224, also fails to sustain the defendant's case. That was a sale of goods " to arrive," and it was expressly found that by the use of this mercantile term, if the property or the vessel named did not arrive, the buyer would have no right to the goods, and so no present insurable interest in them.

It follows that it would have been erroneous to have given the instructions requested. Upon the point closely allied, namely, what effect, if any, the defendant's mistake or ignorance of a material fact, such as the destruction of the rest of the wool, would have on the alleged act of acceptance, we are not required by the terms of the request to pass.

The third and last request was also properly refused for the reasons above given. If the property in the wool passed by the terms of the original agreement, and the contract was taken out of the statute by the subsequent acceptance and receipt, then, as we have seen, as between the parties, the risk of loss was on the defendant at the time of the fire, and the plaintiff may recover the agreed price of the whole.      *Exceptions overruled.*