SAMUEL A. STODDARD & another *vs.* JOSEPH HAM.

Suffolk.    March 23. — Sept. 10, 1880.    AMES & LORD, JJ., absent.

If A. sells goods to B., who sells them to C., the fact that A. supposed he was selling the goods to C. through B. as his agent, and would not have sold them to B. on his sole credit, will not entitle A. to maintain an action against C. for the conversion of the goods.

TORT for the conversion of a quantity of bricks. Answer, a general denial. Trial in the Superior Court, without a jury, before *Pitman*, J., who reported the case for the determination of this court upon the following facts found by him :

The plaintiffs were manufacturers of and dealers in bricks, at Bangor, Maine. The bricks in question were there purchased of the plaintiffs by Charles E. Leonard, who did a commission business in that city, but sometimes bought on his own account.

The plaintiffs supposed they were selling these bricks to the defendant through Leonard as his agent; and they were sold on the credit of the defendant solely, and would not have been sold on the personal credit of Leonard; but Leonard was not the agent of the defendant in this purchase, and had no authority to bind him. Leonard was not guilty of any false representations as to agency; and it was a case of error and mistake on the part of the plaintiffs as to the principal with whom they were dealing.

The bricks were bought upon short credit, and were immediately sold by Leonard to the defendant, at a fixed price delivered in Boston, and were, in fact, bought with a view to such sale. The bricks remained in the plaintiffs' yard and possession until after the sale by Leonard to the defendant, and were afterwards delivered by the plaintiffs at a wharf in Bangor, as directed by Leonard, and by him shipped to the defendant, Leonard taking the bills of lading in his own name. Leonard sold other bricks to the defendant, at or about the same time, and drew drafts against the aggregate cargoes, which were accepted and paid by the defendant, who also paid the freight on account of Leonard. From the proceeds, certain payments were made by Leonard to the plaintiffs, who supposed that they were made on the defendant's account, and they were credited to the latter. After the bricks were all delivered, Leonard failed in business, and no other payments were made. Leonard was largely indebted to the defendant, and he offset the claim of Leonard for the balance due him on the bricks by this antecedent indebtedness. After Leonard stopped payment, the plaintiffs made due demand on the defendant for the bricks, contending that they had never parted with the property in them, if the defendant repudiated the agency of Leonard; and offered to repay the defendant for all advances and expenses incurred by him; but the defendant refused to deliver them, and claimed to hold by purchase from Leonard. At the time of the demand, the defendant had on hand some of the bricks which came from the plaintiffs' yard the others had been sold and delivered by the defendant as they arrived.

Upon these facts, the judge ruled, as matter of law, that the plaintiffs could not recover; and ordered judgment for .the

defendant. If the ruling was right, judgment was to be entered for the defendant; otherwise, the case to stand for a new trial.

*S. H. Tyng*, for the plaintiffs.

*N. Morse*, for the defendant.

COLT, J. This case was tried without a jury, and there is no reason to doubt that, upon the facts found by the judge, it was correctly ruled that the plaintiffs could not recover in tort for the conversion of the property in dispute.

It is not enough to give the plaintiffs a right to recover, that they supposed they were selling bricks to the defendant, through Leonard his agent, and that they would not have sold them to Leonard on his sole credit. The judge found that they were in fact sold to Leonard. There was no fraud, no false representation of agency, or pretence on the part of Leonard that he was buying for any one else. He was a commission merchant, who was in the habit of purchasing goods on his own account, and who honestly bought the bricks for himself, and sold them to the defendant as his own. It was not a case of mistaken identity. The plaintiffs knew that they were dealing with Leonard; they did not mistake him for the defendant; nothing was said as to any other party to the sale. The conclusion is unavoidable that the contract was with him. The difficulty is, that the plaintiffs, if they had any other intention, neglected then to disclose it. It was a mistake on one side, of which the other had no knowledge or suspicion, and which consisted solely in the unauthorized assumption that Leonard was acting as agent for a third person, and not for himself.

It is elementary in the law governing contracts of sale and all other contracts, that the agreement is to be ascertained exclusively from the conduct of the parties and the language used when it is made, as applied to the subject matter and to known usages. The assent must be mutual, and the union of minds is ascertained by some medium of communication. A proposal is made by one party and is acceded to by the other in some kind of language mutually intelligible, and this is mutual assent. Met. Con. 14. A party cannot escape the natural and reasonable interpretation which must be put on what he says and does, by showing that his words were used and his acts done with a

different and undisclosed intention. *Foster* v. *Ropes*, 111 Mass. 10, 16. *Daley* v. *Carney*, 117 Mass. 288. *Wright* v. *Willis*, 2 Allen, 191. 2 Chit. Con. (11th Am. ed.) 1022. It is not the secret purpose, but the expressed intention, which must govern, in the absence of fraud and mutual mistake. A party is estopped to deny that the intention communicated to the other side was not his real intention. To hold otherwise would be to put it in the power of the vendor in every case to defeat the title of the vendee, and of those holding under him, by proving that he intended to sell to another person, and so there was no mutual assent to the contract.

In *Boston Ice Co.* v. *Potter*, 123 Mass. 28, cited by the plaintiffs, there was no privity of contract established between the plaintiff and the defendant. There was no evidence afforded in the conduct and dealings of the parties, that the defendant assented to any contract whatever with the plaintiff. A stranger attempted to perform the contract of another party with the defendant.

In *Hardman* v. *Booth*, 1 H. & C. 803, there was abundant evidence that the contract was with another party, to whom the goods were sent, and not with the person who obtained possession of them and sold them to the defendant. In *Mitchell* v. *Lapage*, Holt N. P. 253, the goods were expressly bought of a firm, which, without the knowledge of the broker, had been dissolved by the withdrawal of two of its members.

We are referred to no case which supports the claim here made by the plaintiffs. *Judgment for the defendant.*