## AMBROSE W. DEAN *vs.* W. S. GIVEN COMPANY.

### Waldo.    Opinion July 13, 1923.

*A part payment, though deferred, of the purchase price of certain potatoes by check drawn by the agent of the buyer and delivered to the agent of the seller, though payable to a third person, if the check is cashed and the proceeds given to the seller with the approval of the payee, removes the contract from the statute of frauds.*

The identity of the bargainor, in a contract made by telephone, where, as between the immediate parties, the title to the property sold passed when the bargain was struck, being settled by verdict in the plaintiff's favor, it is,

*Held:*

That the proceeds of a check drawn by the buyer's agent to the order of a third person, from whom the agent apparently supposed that he had bought the property, but delivered to the seller's agent in intention of a deferred part payment on the particular transaction, left the remedy on the contract, perhaps otherwise within the statute's ban, unaffected by the statute of frauds.

On motion and exceptions.    An action of assumpsit on account annexed to recover the balance of the purchase price of certain potatoes bargained and sold by telephone.    The plaintiff claimed that, on December 2, 1921, he so bargained and sold to defendant's agent the estimated quantity of one thousand bushels of potatoes at eighty cents the bushel, the potatoes to be delivered by the plaintiff at a railroad station after the buyer should have picked and bagged them in the cellar where they were, commingled with what remained of the rest of the crop.    On December 9th, the situation meanwhile remaining unchanged, the plaintiff sent his mother to the defendant's agent for a part payment.    That agent drew his check to the order of the father of the plaintiff and delivered it to the plaintiff's mother, taking a receipt therefor.    She cashed the check and gave the proceeds to the plaintiff, with the subsequent approval of the payee. On December 12th, nothing further having been done in regard to the transaction, most of the potatoes were destroyed by an accidental

fire. Plaintiff sued for the full purchase price less the fifty dollars already paid. The defendant denied any liability to the plaintiff, set up the statute of frauds by way of brief statement under the general issue, and reserved and perfected exceptions. The verdict was for the plaintiff in full accordance with his demand. Motion and exceptions overruled.

*Buzzell & Thornton,* for plaintiff.

*McLean, Fogg & Southard,* for defendant.

SITTING: CORNISH, C. J., HANSON, DUNN, MORRILL, DEASY, JJ.

DUNN, J. Whether the contract for the sale and purchase of the potatoes was between the plaintiff and the defendant, or between the plaintiff's father and the defendant, was decided by the jury, on a closely contested issue, in the plaintiff's favor.

There also was sharp conflict concerning other facts.

The further story, which the verdict declared, was this: Having, as he estimated, one thousand bushels of merchantable potatoes, commingled with what remained of the rest of a crop stored as it was dug, in the cellar of his father's house, the plaintiff phoned the defendant's agent soliciting him to buy. They traded for all the vendible ones. The buyer was to cull and bag the potatoes in the cellar. And the plaintiff was to draw them to a loading station on a railroad line; the price of eighty cents the bushel to pay for both the potatoes and the carting.

In unchanged situation, exactly one week later, the plaintiff's mother, by his request, went to the agent and said, "we wanted some money on the potatoes." The agent filled the blanks in a form of receipt. That document, which the agent conceded had relation to the potatoes, recited, not a mere agreement to buy, but a sale. The receipt was handed to the mother. "He told me to sign it," testified she, "and I said, 'what will I sign, my name, or what will I sign?' he says, 'Charles Dean'." Or, to use her phrase when recalled, "What will I sign here, his or my name, and they says, 'his'." Charles H. Dean was her husband, and the father of their child Ambrose, this plaintiff. She wrote "C. H. Dean" at the foot of the paper without indicating that the signing was by any other person than the bearer of the name. Then the receipt was "accepted" for the principal by his agent. And fifty dollars, the amount for

which it called, was paid to the mother by a check to her husband's order. She cashed the check at a village store. When at home again, she passed the fifty dollars and a duplicate of the receipt to her son. Negotiation of the check eventually had the approval of its payee.

Matters stood thus until, three days later, most of the potatoes were destroyed by an accidental fire. Defendant's agent, after the fire, picked out the potatoes that were fit for market. These were put into bags which he brought. And the bags of potatoes were hauled to the station by teams procured at the plaintiff's direction.

The defendant corporation, insisting that its trading was with the plaintiff's father, utterly denied liability to the plaintiff. This action was for the price of the one thousand bushels, less the fifty dollars paid. The count in the writ—assumpsit on an account annexed—was sufficient for goods sold and delivered or goods bargained and sold. *Kelsey* v. *Irving*, 118 Maine, 307. By brief statement under the general issue, defendant invoked the statute for the prevention of frauds and perjuries. Plaintiff has a full verdict. The evidence for his side, being believed, justified the jury's decision.

The deeper question is, whether the fifth section of the statute of frauds affected enforceability of the contract.

That section reads:

"No contract for the sale of goods, wares or merchandise, for thirty dollars or more, shall be valid, unless the purchaser accepts and receives part of the goods, or gives something in earnest to bind the bargain, or in part payment thereof, or some note or memorandum thereof is made and signed by the party to be charged thereby, or by his agent." R. S., Chap. 114, Sec. 5.

By the rule of the common law, were the statutory provision not intervening, a present sale of definite chattels may be complete, as between the parties, in the absence of delivery, when the terms are agreed on and the bargain struck. Even in the view of the statute, the property passes at once in a sale of the chattels, if such is the intent, although the seller is afterward to make delivery of the goods. *Penley* v. *Bessey*, 87 Maine, 530. "The fact that it was one of the conditions of the sale, that the plaintiff should haul the hay to the depot, . . . . is not inconsistent with the proposition that it might have . . . . become the property of the defendant, at the barn." *Dyer* v. *Libby*, 61 Maine, 45. Also see *Edwards* v. *Brown*,

98 Maine, 165.   The statute implies delivery by superadding acceptance and receipt; the acceptance touching the title to, and the receipt the possession of, the property.   *Beedy* v. *Brayman, etc., Co.,* 108 Maine, 200.   There is a distinction, it may not be amiss to remark, between a parting with title as between the parties, and an acceptance and receipt relied upon to free the remedy from the statute's ban.   Acceptance and receipt may be concurrent with the contract, or, if in pursuance of it, thereafterwards and before the suing of the action.   *Bush* v. *Holmes,* 53 Maine, 417; *Bird* v. *Munroe,* 66 Maine, 337; *Ford* v. *Howgate,* 106 Maine, 517; *Beedy* v. *Brayman,* supra.   It is not argued here that, prior to the fire, there was an acceptance and receipt.   The acceptance of part of the potatoes, after the destruction of a large part of them by fire, may have operated retrospectively, in so far as the statute is concerned, and cast on the buyer the risk of their loss.   *Townsend* v. *Hargraves,* 118 Mass., 325. Said Chief Justice Weston, in analogy:   "The defendant had no right to take a single log, except upon the basis of the contract, which was entire."   *Davis* v. *Moore,* 13 Maine, 424.   But there is no need to decide this now.

As regards other methods of satisfying the statute, nothing was paid in earnest; and, unreformed, the note or memorandum was insufficient because, although it was signed by the party to be charged, that is, by the party against which it was sought to be enforced, (*Pendleton* v. *Poland,* 111 Maine, 563), still it did not contain the names of the vendor and his vendee.   *Williams* v. *Robinson,* 73 Maine, 186; *Kingsley* v. *Siebrecht,* 92 Maine, 23.

As acceptance and receipt may be later than the contract of purchase, (*Bush* v. *Holmes,* supra; *Bird* v. *Munroe,* supra; *Ford* v. *Howgate,* supra; *Beedy* v. *Brayman,* supra), and as the note or memorandum, which usually is but evidence of the contract, (though sometimes it may be the contract, *Guild* v. *Eastern, etc. Co.,* 122 Maine, 514) may be made afterward (*Bird* v. *Munroe,* supra; *Wade* v. *Curtis,* 96 Maine, 309; *Weymouth* v. *Goodwin,* 105 Maine, 510), but preceding action, so, by parity or reasoning, a part payment may also follow the contract of sale before suit, in substitution of an act for words, on the one continuous transaction.   "There is nothing in the statute," runs an opinion delivered in Massachusetts, though decision turned on another hinge, "which fixes or limits the time within which a purchaser is to  .  .  .  .  give something  .  .  .

in part payment." *Marsh* v. *Hyde*, 3 Gray, 331. See, supporting that idea, *Thompson* v. *Alger*, 12 Met., 428; Browne, Statute of Frauds, Sec. 343; Williston on Contracts, Sec. 566; *Dallavo* v. *Richardson*, (Mich.), 96 N. W., 20.

It is not difficult, in the case in hand, to maintain the proposition of a deferred part payment. That the plaintiff and the defendant's agent contracted concerning the especial potatoes stands out distinctly. The plaintiff's mother was his agent to receive a payment from the party of the second part. Her request was for money on the potatoes. She may or may not then have known that her son, in advance of the sale to the defendant, had acquired title to the interest that her husband had had in a part of the potatoes. But this was inconsequential. She was her son's agent for the single purpose of receiving a payment. No act of hers alone could constitute her the agent of her husband. Nor could the defendant's agent by his sole act make her a different agent. Nor could the agents in concert make either of themselves the agent of a stranger to the transaction. That the defendant's representative knew full well on what potatoes she asked payment was shown by his own testimony. His doubtfulness was whether the oral bargain over the telephone was with the father or the son. That doubt the jury resolved. And it was the mother's knowledge that she was receiving, as the agent for her son, a payment in part for the potatoes, which, though sold, still lay in the cellar of the family home, awaiting segregation by the buyer. Those potatoes never were confused and erroneously identified in the mind of either agent.

Regardless, therefore, of how the one agent filled in the receipt, and of the manner in which the other signed it, the agents, all the while, within their respective scopes and in mutuality of intention, were concerned with but one contract,—that which the defendant's agent made with the plaintiff. Since it was consistent that a part payment in money should be made, and since the proceeds of the check, despite the irregularity of its drawing, were applied in payment, the conclusion is syllogistic, that there was a part payment in money for the potatoes.

The part payment averted the statute's interdiction. All other questions which were raised in the course of the trial must rate, for this reason, as of unimportance.

> *Motion overruled.*
> *Exceptions overruled.*