VERA J. MURRAY, administratrix, *vs.* ABRAHAM INDURSKY.

Middlesex.   January 9, 1929. — February 13, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Sale. Motor Vehicle,* Registration. *Way,* Public: Trespasser on way. *Trespass. Negligence,* In use of way, Motor vehicle, Contributory. *Evidence,* Presumptions and burden of proof.

At the trial of an action of tort by an administrator for causing the death of his intestate, which resulted from a collision between an automobile operated by the intestate and registered and insured in his name and a motor truck owned and operated by the defendant, there was evidence that, about two months before the accident, the intestate, who then owned the automobile, agreed to sell it.   The purchaser testified that he made a payment on account of the purchase price and the automobile was delivered to him; that he agreed to make a payment every two weeks thereafter; that there was talk about the insurance and registration, but no suggestion that the intestate was to reserve the title or the right of use until payment was made in full; that thereafter the purchaser used the automobile without changing its registration, and made repairs on it; that the intestate borrowed the automobile from him on the day of the accident; and that the purchase price had not fully been paid at that time.   A witness testified that the intestate, shortly before the accident, said that he had sold the automobile, but had reserved the use of it until it was paid for in full, and that it was "to remain in his name" without a transfer of the registration or insurance until payment in full was made.   The defendant presented a motion that a verdict be ordered in his favor on the ground that the intestate was operating an automobile at the time of the accident which was not properly registered.   The trial judge denied the motion, ruling that the plaintiff could not recover if the automobile was illegally registered, and that the burden was on the defendant to show that the sale of the automobile was unconditional.   *Held,* that

(1) The question of the transfer of title to the automobile must be determined in accordance with the intention of the parties as shown by a reasonable construction of their language and conduct;

(2) That question was for the jury;

(3) The motion properly was denied.

There was evidence at the trial of the action above described that the truck and the automobile approached each other on a long curve on a way sixteen feet wide, the truck proceeding uphill in the center of the road and the automobile proceeding down on its right side at about twenty miles an hour; that the truck was loaded with iron rods projecting diagonally from the front so that its outside width including the load was greater than that permitted by G. L. c. 90, § 19; and that the rods caught in the top of the automobile and caused the accident. There was no evidence to show how far away the truck was when the intestate first saw it, or whether he saw the rods, or how quickly the automobile could have been stopped, or whether it could have passed the truck safely. *Held,* that it could not properly have been ruled as matter of law that the intestate was guilty of contributory negligence; that question was for the jury.

TORT by the administratrix of the estate of Francis G. Murray, to recover for his death. Writ dated September 10, 1927.

Material evidence at the trial in the Superior Court before *Morton,* J., is stated in the opinion. At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in his favor. The jury found for the plaintiff in sum of $6,400. The defendant alleged exceptions to the denial of his motion and to the rulings of the judge, described in the opinion, on the question of the registration of the automobile which the plaintiff's intestate was operating.

*F. N. Wier,* (*M. J. Cohen,* with him,) for the defendant.

*J. H. Gilbride,* for the plaintiff.

SANDERSON, J. This is an action of tort to recover for the death of the plaintiff's intestate resulting from a collision on June 30, 1927, between an automobile operated by him and a motor truck owned and operated by the defendant. The macadam surface of the street was sixteen feet in width. The vehicles were approaching each other on a long curve, the truck proceeding uphill in the center of the road and the automobile going down on the right hand side. The truck was loaded with iron rods fifteen to twenty feet long with ends projecting diagonally from the front. Evidence was introduced tending to show that the outside width of the truck including the load was more than three feet in excess

of ninety-six inches, the width permitted by G. L. c. 90, § 19. The projecting rods caught the top of the automobile, crashed through the windshield and caused the fatal injury.

A woman on the seat with the driver of the automobile testified that she noticed the truck with the rods extending beyond it approaching in the center of the road, turning the curve fifty feet from her, and she said to the driver "how are you going to get by?" that he did not have time to turn to the right and get by the rods or to answer when she spoke, but she thought the automobile slowed down just before the accident. She estimated the speed of the automobile to be about twenty miles an hour. It was registered and insured in the name of the deceased.

One Lussier, a witness called by the defendant, testified in substance that he purchased the automobile of the deceased in May, 1927, making a payment on account of the purchase price on May 6, 1927, and that it was delivered to him at the time of the first payment. He agreed to make a payment every two weeks thereafter, and made one on June 20, 1927. At the time of the accident, $12.50 remained due on the purchase price. He repaired the automobile, · renewed certain parts, and continued to use it after its purchase without changing the registration plates. On the day of the accident the deceased asked Lussier to allow him to take the automobile for a trip to Wellesley, and Lussier consented to his use of it during the day if the deceased would take him to Boston, and they went that far together. When the sale took place there was talk about registration and insurance; but no suggestion that until the automobile was paid for the deceased was to reserve title or the right to use it. In rebuttal the plaintiff, mother of the deceased, testified that some time in June, 1927, her son told her that he had sold the automobile to Lussier but he, the son, was to have the use of it until it was paid for in full; that he was not going "to turn over the insurance and registration or number plates or anything until the car was fully paid for, that it was still to remain in his name." She also testified that after the accident she asked Lussier to pay for the automobile and he said he did not have the money but asked her to have the

registration changed to his name, and she told him that the automobile still belonged to her son. She took it from the place in Natick where it was stored after the accident and had it in her possession at the time of the trial.

The intention of the parties respecting the passing of title must be ascertained from the terms of the agreement as expressed in the language and conduct of the parties and as applied to known usages and the subject matter. *Foster* v. *Ropes,* 111 Mass. 10, 16. *Stoddard* v. *Ham,* 129 Mass. 383, 385. *Wigton* v. *Bowley,* 130 Mass. 252, 254.

The jury were not bound to believe the testimony of Lussier; and it was for them to say whether the statement of the deceased to his mother meant that one of the terms of the contract was that the automobile was to remain in the son's name until full payment was made, and whether the parties understood that title was not to pass until that time. An agreement that property shall remain in the name of the seller is not essentially different in its legal effect from an agreement that title should not pass from him. The judge was right in submitting the case on this issue to the jury. He ruled, in substance, that the plaintiff could not prevail if her son was driving an automobile which was without legal registration, and that the defendant to maintain this defence of violation of statute must satisfy the jury that the sale was absolute and unconditional. See *Doherty* v. *Ayer,* 197 Mass. 241; *Conroy* v. *Mather,* 217 Mass. 91. If the deceased held the legal title a registration in his name was authorized. *Temple* v. *Middlesex & Boston Street Railway,* 241 Mass. 124.

We do not know how far away the deceased was when he first saw the truck, within what space the automobile could have been stopped, or whether he saw the protruding rods; nor do we know whether the automobile could have passed in safety in the space between the ends of the projecting rods and the side of the road. Conflicting evidence as to the rate of speed of each vehicle was introduced and it was for the jury to say whether the speed of the automobile was greater than was reasonable and proper under all the circumstances and, if so, whether such violation of law was a contributory cause of the accident. The plaintiff had a right to rely to

some extent on the expectation that the defendant's truck in passing would be on the right of the center of the road.   The jury may have found that the location of the truck, and the manner in which it was being driven with the rods projecting, had a material bearing on the question whether negligent conduct of the deceased was a contributing cause of the accident.   The driver of an automobile who goes around a curve where his view of traffic is obstructed at a rate of speed which is made by statute evidence of an unreasonable and improper rate (G. L. c. 90, § 17), and becomes involved in an accident on the curve, might well be found guilty of contributory negligence, but we cannot say that the facts in this case required that conclusion as matter of law.

The exception to the refusal of the judge to rule that the evidence would not justify a finding that the defendant was negligent has not been argued and is treated as waived.   The record discloses no reversible error in the matters to which the exceptions argued relate.

*Exceptions overruled.*