# SUPREME COURT.

## ADAM GOOD, respondent agt. WALTER L. CURTISS AND FREDERICK DEMING, appellants.

Where there is no note or memorandum in writing made of the contract of sale of personal property for over $50, nor no part of the purchase money paid, the validity of the agreement must depend upon whether the buyer *accepted or received* any part of the property agreed to be sold.

In order to constitute an acceptance or receiving of a part of the property within the meaning of the statute, it is necessary that there should be some *act*, something done indicating it beyond words merely. Accordingly, where the vendor and vendee, with the property before them, agree upon the terms of sale and the price to be paid, and that the goods which is the subject of the contract shall become the property of the vendee, the title does not pass. .

But it is not necessary that any part of the goods should be accepted or received by the buyer at the time of the contract; an acceptance or receiving of the same at any time afterwards, if it be done under the contract, and *while that remains unrevoked*, will be sufficient to comply with the requirements of the statute.

Where in an action upon an account against the defendants, they undertook to set off the value of some personal property which they claimed they had sold to the plaintiff, and that he had accepted a portion of it, which was in his possession, and ratified the agreement by its sale to a third person :

*Held*, that this action, having been commenced by the plaintiff some three weeks before he sold the property to such third person, was an unmistakable indication of the plaintiff's intention to disaffirm the contract, alleged by the defendants for the sale of the whole property previously, especially as the value of the property claimed by the defendants, largely exceeded the plaintiff's account. Besides the positive testimony was sufficient to show that the alleged contract was discarded by the plaintiff, even though the sale of a portion of the property by the plaintiff, subsequently, might be considered a wrongful conversion of it by him.

*Argued at Erie General Term, 8th Judicial District, February,* 1866, *and decided May General Term,* 1866.

*Before* GROVER, *P. J.,* DANIELS, MARVIN *and* DAVIS, *J. J.*

THIS action was brought to recover the price of certain work and labor performed, and materials furnished, by the plaintiff for the defendants, at their request. The defendants defense consisted of an account for iron, and other things, alleged to have been sold and delivered to the plaintiff at his request, and which they endeavored to set off against his demand on the trial of this action. This was rejected by the referee before whom the trial was had, and

various exceptions were taken to his rulings by the defendants.

The evidence, on the part of the defendants, proved that about the middle of September, 1864, the defendants owned a quantity of old iron and copper, part of it being at their store and part of it at the plaintiff's shop, and the residue near Mr. Noye's foundry, in the city of Buffalo; and at that time the agent or superintendent of the plaintiff's business, offered to buy the iron and copper of the defendants at certain prices per pound, then specified by him, which the defendants agreed to answer on the following day, and on that day informed the plaintiff's clerk, at his place of business, that they would sell the plaintiff the iron and copper at the prices offered for the same.

By the terms of the offer, which was accepted by the defendants, the plaintiff was to have the iron weighed, and remove that part of it to his shop which was not then there. That part of the iron was not weighed by the plaintiff, or by any person acting under his authority, and no part of it was removed from the place where it was when the offer was made, or taken to the plaintiff's shop. The iron at the shop remained there until the first of December, 1864, when the plaintiff sold it to persons to whom he had previously sold out his business and shop. At the time of the sale of this part of the iron, the plaintiff stated to the purchaser of it, that he had bought it of the defendants, and credited it to them on their bill.

At the time when the offer was made for the purchase of the iron and copper from the defendants, the plaintiff was absent from the city of Buffalo, and had no personal knowledge of what had transpired in relation to it until the early part of November, 1864.

The plaintiff's son, who was his clerk, testified that he told Mr. Curtiss that he didn't want the iron; which, he says, took place about two weeks after a conversation between Deming and Allen, the plaintiff's superintendent, in which something was said about seeing Dunbar, &c. The superintendent, Mr. Allen, testified that the clerk did tell Mr. Cur-

tiss that he did not want the iron the latter part of October, 1864, about the time the bill of the plaintiff's demand was made out. The defendant, Deming, testified that the Clerk did not tell him that he did not want the iron, and that he never had any conversation at the plaintiff's office, when Dunbar's name was mentioned, as the clerk had testified. The clerk testifies that he never told Mr. Deming anything about the iron; and Curtiss does not appear to have been examined as a witness on the trial.

At the price offered for the iron and copper, it amounted to the sum of $391.19. No part of this price was, at any time, paid, or credited by the plaintiff, or any one acting for him, to the defendants.

The referee found that the contract of sale was entered into, as the defendants claimed it to be, but that no part of the iron or copper was ever weighed by or delivered to, or received or accepted by the plaintiff; and that the contract, not being in writing, was void. To these conclusions the defendants excepted; and from the judgment entered upon the referee's report, which was in favor of the plaintiff for the amount of his account, the defendants appealed.

GEO. WADSWORTH, *for appellants.*

MANN and COTHRAN, and GEO. W. COTHRAN, *for respondents.*

I. The agreement for the sale of the old iron and copper never having been completed, was void. (2 *N. Y. S. at L.* 140, § 3.)

1. No part of the iron or copper was ever delivered.

2. The agreement was not in writing; and nothing has been paid on it.

3. No part of the iron or copper was ever weighed until after this action was instituted.

4. The iron and copper were to be weighed in order to ascertain the quantities of each.

5. When weighed by defendants, after this action was

brought, it remained in same place and condition as when the pretended agreement was made.

6. The whole transaction amounted to just this : Allen, the plaintiff's agent, made defendants an offer for the old iron and copper, part of which was in plaintiff's yard, as mere bailee, and part at defendants' store, which offer defendants were to accept, and notify Allen of their acceptance that evening or the next day, and the defendants did not inform him of their acceptance of the offer.

Deming testifies that he informed A. Good, Jr., that they could have the iron and copper without alluding to Allen's offer, and there is no evidence that young Good knew of the offer Allen had made. But A. Good, Jr., testifies to the contrary, as to notice. And the referee has found that the "negotiations" never became a valid contract, which in legal effect is a decision that no notice was given.

Even were it true that the notice had been given to A. Good, Jr., as Deming testifies, it was no notice to Allen or to plaintiff, for Good, Jr. had no authority to purchase. Furthermore, A. Good, Jr., never informed Allen or plaintiff.

This agreement was talked about *during the creation* of plaintiff's account.

Deming testifies that the plaintiff's account was to be applied in part payment for the iron and copper. But no application of it was ever made by either party, nor in any manner. Neither party performed any *act* in that behalf (*Ely* agt. *Ormsby*, 12 *Barb.* 570).

When defendants subsequently spoke to Allen about the iron and copper, Allen declined to take them.

The first information plaintiff had on the subject was when he presented this account for payment. This was about November 1st. That he refused to assent to the pretended sale, is shown by his bringing this action November 9.

Nothing can be claimed on account of the iron sold by plaintiff to Farrar, Treffts & Knight. That was sold December 1st, after this suit was brought. Having refused to complete the purchase, and having brought this action in disaffimance thereof, the subsequent sale by plaintiff of part

of defendants' property without their knowledge or consent, amounted to a wrongful taking and conversion. There is no pretense that plaintiff intended to apply the iron thus used, on the contract which he had already so distinctly disaffirmed.

An acceptance to be binding must be clear and unequivocal. (*Ely* agt. *Ormsby*, 12 *Barb*. 570; *Carter* agt. *Touissant*, 5 *Barn. & Ald.* 855).

II. To render a void contract valid by reason of a subsequent part payment, or partial delivery of the property, the part payment or partial delivery must be made by the one party, and accepted and received by the other party, with the mutual agreement and intent that it is to be applied upon, and to be a part performance of the contract. (*McKnight* agt. *Dunlop*, 1 *Seld*. 543-4; *Marsh* agt. *Hyde*, 3 *Gray, Mass. R.* 331; *Browne on Statute of Frauds*, §§ 337, 339, *p.* 346; 2 *Abbts. Digest* 88, *Nos.* 770-2, *and cases cited*; *Shindler* agt. *Houston*, 1 *N. Y. R.* 265.)

In this case there was neither a delivery nor part payment. The whole transaction consisted merely of words. Something more than words is essential. (*Shindler* agt. *Houston*, 1 *N. Y. R.* 261, 265; *Brabin* agt. *Hyde*, 32 *N. Y. R.* 519.)

There was, therefore, no contract made.

Even had Deming notified Allen of defendants' acceptance of his offer in time, it would not avail ought to the defendants.

This account was not created with reference to the sale of this iron and copper. Plaintiff had been performing similar services and furnishing similar materials prior to this, and this account was commenced in July, and this offer was made the middle of September, and it was not credited by the parties on the alleged contract, nor intended to be credited unless plaintiff took the iron and copper.

Even had the parties mutually agreed that this account should apply on the iron and copper, yet not having been actually applied, it would not take the case out of the statute. (*Clark* agt. *Tucker*, 2 *Sandf*. 157; *Ely* agt. *Ormsby*, 12 *Barb*. 570.)

There are cases where a party has been held to have

Good agt. Curtiss.

affirmed a void contract for the purchase of personal property, by subsequently dealing with the property as his own. But in all those cases, the interference with the property was antecedent to his positive refusal to be bound by the contract. Such was the case of *Chaplin* agt. *Rogers* (1 *East*, 192), where the purchaser actually sold part of the hay, and which had been removed by the party to whom he sold it. The jury found that there had been an acceptance, and the verdict was allowed to stand. (*See Shindler* agt. *Houston*, 1 *N. Y. R.* 268, *bottom of page*.)

III. Where anything remains to be done by the vendor, such as ascertaining the identity, quantity or quality of the articles sold, the title does not pass. (*Joyce* agt. *Adams*, 4 *Seld. R.* 291 ; *Outwater* agt. *Dodge*, 7 *Cow.* 85.)

There was no delivery, nor was the iron or copper weighed until plaintiff refused to have anything to do with the contract.

Suppose an execution had issued against defendants at any time, could there be a doubt but what this property would have been liable to levy and sale ?

Part of this iron had been in plaintiff's yard long anterior to Allen's offer. The balance of the iron and the copper were in defendants' store on Main street, where it still remains.

IV. The defendants allege in their answer, that they have paid this demand. The referee negatives this averment, except as to $2.84. This finding is correct.

The other defense consists of this contract for the sale of the copper and iron. The referee has fully disposed of that by finding that no valid contract was made. This finding is also in accordance with the evidence.

From this disposition of the case by the referee, it necessarily follows that whatever iron belonging to defendants that plaintiff may have used, was not used under the contract alleged in the answer, but was converted by plaintiff. There is no allegation in the answer under which the defendants can claim to have the value of this iron set off against plaintiff's demand. And then the recovery here is no defense to

an action in favor of defendants for the iron thus converted. The judgment should not be disturbed on this account, but should be affirmed.

The whole case resolves itself into two questions of fact. 1st. Was there a contract of sale of this iron and copper made?

2d. If made, was there a part payment or partial delivery of the property as required by the statute? The referee has distinctly negatived both of these questions; and his findings are not only supported by the evidence, but there is really no evidence to the contrary.

*By the court,* DANIELS, J. If the agreement made between defendants and the plaintiff for the sale and delivery of the iron and copper was binding upon the parties, it was sufficient to constitute a sale of the property, as distinguished from a mere agreement to sell; for nothing further was to be done on the part of the vendee, as between them and the purchaser, and where that is shown to be the case, the title to the property passes to the purchaser, even though it may still be necessary for the vendee to weigh it in order to ascertain the aggregate price he may be liable to pay for it under the agreement. (*Smith's Mercantile Law,* 571-3, *and Notes; Downer* agt. *Thompson,* 6 *Hill,* 208; *Joyce* agt. *Adams,* 4 *Seld.* 291, 296; *Terry* agt. *Wheeler,* 25 *N. Y. R.* 524-5.)

The difficulty in the way of carrying the agreement into effect, therefore, arises solely out of the circumstances that there was no note or memorandum of it in writing. The statute commonly called the statute of frauds, provides that every contract for the sale of any goods, chattels or things in action, for the price of fifty dollars or more, shall be void unless, 1st. A note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby; or, 2d. Unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action; or, 3d. Unless the buyer shall at the time pay some part of the purchase money (3 *R. S.* 5*th ed.* 221, § 83). As no note or memorandum of the contract of sale was made, nor no part of the purchase money paid

in this case, the validtiy of the agreement depends entirely upon whether the buyer accepted or received any part of the goods or property which was the subject of the agreement.

In order to constitute an acceptance or receiving of a part of the goods within the meaning of the statute, it is necessary that there should be some act, something done indicating it beyond words merely. Accordingly, it has been held that where the vendor and vendee, with the property before them, agree upon the terms of sale and the price to be paid, and that the subject of the contract shall become the property of the vendee, the title does not pass if the price for which the sale is made exceeds the sum of fifty dollars. (*Shindler* agt. *Houston*, 1 *Comst. R.* 261 ; *Brabin* agt. *Hyde*, 32 *N. Y. R.* 519.)

It is not necessary that any part of the goods should be accepted or received by the buyer at the time of the contract, but an acceptance or receiving of the same at any time afterwards, if it be done under the contract, and while that remains unrevoked, will be sufficient to comply with the requirements of the statute. (*Sprague* agt. *Blake*, 20 *Wend.* 61 ; *McKnight* agt. *Dunlop*, 1 *Seld.* 537.)

If the contract between these parties continued open at the time when the plaintiff sold the iron upon his premises which belonged to the defendants, to Farrar, Treffts & Knight, that sale of itself will be sufficient to charge him with having received and accepted a part of the property, which by the contract he had undertaken through his agents to purchase ; for a more unequivocal act of acceptance than that of selling and transferring the property to another cannot very well be imagined.

The only question necessary for consideration in this case, therefore is, whether the contract of sale between the defendants and the plaintiff was at that time subsisting and unrevoked. If it was, then the acceptance of that part of the iron which was on the plaintiff's premises rendered it valid and binding not only as to that, but as to all the rest which was included in it. If, however, an end had been put to the

contract, then the sale made of this part of the iron by the plaintiff, would not renew or revive it, although he informed the purchasers that he had bought it of the defendants and credited it to them on their bill. The sale, then, would be a conversion of the property, for which the plaintiff would be liable to defendants to the extent of its value, and not an acceptance of it under the contract of sale; for such an acceptance would be manifestly impossible if the contract had previously been terminated by the act of either or both of the parties.

The referee found and decided that there was no delivery or acceptance of any part of the property, and that the sale made by the plaintiff of that which was upon his premises, was a wrongful conversion of so much of it as he then sold. To justify that conclusion, the evidence must have satisfied him that the contract between the defendants and the plaintiff was not at that time open and subsisting, for upon no other theory could such a conclusion be maintained.

This action seems to have been commenced early in the month of November, in the year 1864, about three weeks before the sale of the iron about his premises was made by the plaintiff to Farrar, Treffts & Knight. The commencement of the action, upon his own account, which would have been overpaid if the contract for the sale of the old iron had not then been repudiated, was an unmistakable indication of the plaintiff's intention to disaffirm that contract. But the evidence of disaffirmance is not wholly confined to that circumstance; for Adam Good, Jr., who was clerk for his father, the plaintiff, in his business, testifies that he told Curtiss, one of the defendants, that he did not want the iron. Mr. Allen, the superintendent, testifies that this was about the latter part of October, 1864. And the other defendant testifies that about a week before the suit was commenced, the plaintiff and Allen, his superintendent, called upon him to settle the bill in suit; that the contract for the sale of the iron was then communicated to the plaintiff, who replied it was the first he had heard of it; and that Allen admitted he had made the offer for the iron, but thought the defend-

ants had not fulfilled their part of the contract and the thing was thrown up.

When it is remembered that the plaintiff was absent at the time the agreement was made for the sale of the iron and copper, and did not return until about the first of November, and during such absence his business was entirely under the control and management of Allen, and the clerk who notified Curtiss that he did not want the iron, it will be seen that there was an unequivocal disaffirmance of the contract by the same persons through whose agencies it was first made, if the referee believed the evidence they gave, and this he must have done before he could reach the conclusions contained in his report. Indeed, when the evidence of Allen and the clerk is considered, with the interview which Deming had with the plaintiff, it is very difficult to see how he could have concluded otherwise.

After that interview, there was no negotiations for reviving the agreement, and nothing said or done indicating any intention to renew or revive it. The mere sale of a part of the iron, accompanied with a statement which the referee finds to have been made, was not sufficient to produce that result.

It follows, therefore, that none of the property was accepted or received by the plaintiff under the contract of sale, and that by the positive declaration of the statute the contract was void.

The defendants insisted upon the argument that the referee should have allowed them the value of the iron sold by the plaintiff. But as that was not accepted under the contract, the plaintiff was not chargeable for it with the prices which it specified, and the value of it was not otherwise proved. Even if it had been, that value could not be allowed in this action, where the liability arose, as it did in this case, out of a wrongful conversion of the property. If the sale had been made before the suit was commenced, the defendants might have waived the tort, and held the plaintiff liable for the proceeds received by him as money had and received to their use, if it had appeared what such

proceeds were. But no evidence was given from which the referee could have determined that as matter of fact. Besides that, the demand had no existence at the time of the commencement of the action, which was sufficient to prevent its allowance either as a counter-claim or a set-off. (*Code*, § 150, *sub.* 2; 3 *R. S. 5th ed.* 634–5, § 12, *subd.* 4.)

The judgment appealed from should be affirmed, with costs.