interest, with the costs of the action, and the costs of the appeal to the General Term, and to the Court of Appeals.

For affirmance, HUNT, EARL and GRAY, CC.

For reversal, LOTT, Ch. C., and LEONARD, C.

Judgment affirmed with costs.

---

LOREN W. MARSH, FREDERICK C. DILLAYE and JOSHUA K. ROGERS, Appellants, *v.* SIMEON ROUSE and AMOS JACKSON, Respondents.

To constitute a sufficient delivery, under an oral agreement for the sale of personal property, to take the contract out of the statute of frauds, the property must be placed within the control and under the exclusive dominion of the buyer.

Where the vendor has an agreement for the purchase of the goods with a third person, and the latter having expressed his readiness to deliver them, the vendor informs him that the purchaser will give him instructions as to shipment, and the purchaser immediately does so, all three being there present, but such instructions are not actually followed by such third person so as to release his lien for the purchase-price, there is no such delivery and acceptance as will bind the purchaser.

(Argued May 5th; decided September 13th, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the fifth district, affirming a judgment entered upon the report of a referee.

The facts of this case, as found by the referee, are substantially as follows:

On Wednesday, the 13th day of January, 1864, the plaintiffs were partners in business in the city of Syracuse, and on that day the defendants were at their store and agreed to purchase of the plaintiffs, and the plaintiffs agreed to sell them, 200 barrels of highwines at one dollar per gallon. This agreement was oral, and none of the property sold was delivered at that time, nor did the vendors then own it, and no part of the purchase-price was paid, and no particular wines were referred to.

644 Marsh v. Rouse. [Sept.,

By the terms of the agreement the highwines were to be delivered at a future time at some station on the New York Central railroad near Syracuse.

On the next day, January 14th, the parties were again together at the store of the plaintiffs, and the plaintiffs then told the defendants that fifty barrels of highwines were at the Skaneateles Junction, and could be shipped at any time the defendants named. Rouse replied that they were in no particular hurry for them, and the plaintiffs had better wait and let them all go together.

The fifty barrels referred to were then owned by one Alonzo Wood, who was a manufacturer of highwines near said junction.

On the 13th, the day of the agreement, the plaintiffs had agreed with Wood to buy of him the above fifty barrels, and fifty other barrels, making 100. This agreement between the plaintiffs and Wood was executory, resting in parol. No part of the property was delivered, and nothing was done under it to make it binding and obligatory upon the parties to it until after Monday, January 18th, 1864.

On Saturday, the 16th day of January, the plaintiffs, defendants and Wood were again together at the plaintiffs' store, and in answer to a question by the plaintiffs, Wood said he could ship 100 barrels on that day. The plaintiffs then told him that the defendants would give him directions as to the shipment, and the defendants who were present did give Wood written directions, naming the consignee in New York to whom they wanted the wines shipped. On the same occasion, one of the plaintiffs went with the defendants to look at a certain lot of highwines in Syracuse, from which it was proposed the 100 barrels should be selected. These 100 barrels were designated, but in no manner delivered to the defendants, and the plaintiffs at the time did not own them.

On Monday, the 18th day of January, the parties again met at the plaintiffs' store, and the defendants informed the plaintiffs that they had concluded to have the 100 barrels to come from Wood shipped to Syracuse instead of New York, and they wanted to find Wood. They found Wood immediately, and

he, at their request and expense, telegraphed to the railroad agent at the Skaneateles Junction as follows: "Do not ship any whiskey until I see you." At this time, the directions for shipping given by the defendants to Wood, on the Saturday before, had not been communicated to such railroad agent, and there were not then but fifty barrels of Wood's high-wines at the station. The other fifty, making the 100, were taken from the distillery to the railroad on Monday, the 18th, but not until after the telegraph message had been transmitted and received.

The fifty barrels that Wood had at the railroad were not in the custody of the railroad, and had not been received by the railroad company, but were in the possession and at the risk of the owner.

The defendants refused to accept and pay for the highwines. After such refusal, the plaintiffs gave the defendants notice that, unless they took the 200 barrels of highwines and complied with the terms of the agreement, they would sell the same and hold the defendants for any deficiency.

The plaintiffs did sell the same at public auction, at the Syracuse House, on the 4th day of February, and the same were bid off nominally by A. A. Howlett, at eighty-five cents per gallon, but, as the evidence tended to show, really for the plaintiffs. They reimbursed Howlett, and the property came under their control.

The plaintiffs afterward realized more than one dollar per gallon for the wines in New York.

This action was brought to recover, as damages for a breach of the agreement by the defendants, the difference between the agreed price to be paid by the defendants and the price for which the plaintiffs sold them as aforesaid at Syracuse.

The referee, as a conclusion of law, held that, upon the facts, the plaintiffs were not entitled to recover. Judgment was entered on the report, which was affirmed at the General Term in the fifth judicial district.

*Stephen D. Dillaye,* for the appellants, insisted, among other

things, that Wood waived the right of *stoppage in transitu* (*Foster* v. *Frampton*, 16 Barn. & Cress., 107; Story on Sales, §§ 338, 339); and waived payment (*Chapman* v. *Lathrop*, 6 Cow., 110; *Ward* v. *Shaw*, 7 Wend., 406). The agreement, if in writing, would have been perfect (*Mactier* v. *Frith*, 6 Wend., 102; *Trevor* v. *Wood*, 1 Trans., 248); and there was sufficient delivery (*Stevens* v. *Wheeler*, 27 Barb., 658; *Stanton* v. *Small*, 3 Sandf., 230; *Shindler* v. *Houston*, 1 Comst., 261; *McKnight* v. *Dunlap*, 1 Seld., 537; *Chaplin* v. *Rogers*, 1 East, 169; *Wilkes* v. *Ferris*, 5 Johns., 525; *Hollingsworth* v. *Napier*, 3 Caines, 182; *Jennings* v. *Webster*, 7 Cow., 256; *Outwater* v. *Dodge*, 6 Wend., 401; *Searle* v. *Keever*, 2 Esp., 598).

*George N. Kennedy*, for the respondents, on the question of delivery, cited Story on Contracts, § 790; *Shindler* v. *Houston* (1 Comst., 273); *Rogers* v. *Phillips* (40 N. Y., 519); *Brand* v. *Focht* (3 Keyes, 409); *Brabin* v. *Hyde* (32 N. Y., 519).

GRAY, C. The absence of a note or memorandum in writing, subscribed by the plaintiffs and defendants, of their contract of the 13th of January, 1864, for the sale and purchase of the 200 barrels of highwines, or the acceptance and receipt of some portion of them by the defendants, or the payment by them of some portion of the purchase-money, rendered the contract void. The contract between the plaintiffs and Wood for the purchase of the 100 barrels lacked the same elements of vitality, and was, therefore, worthless when it was made; and unless the defendants' subsequent directions to Wood to ship the 100 barrels of wines, contracted by him to the plaintiffs, to the defendants' consignee in New York, was an acceptance and receipt by the defendants of the 100 barrels, in part performance of the oral contract of the 13th January, between the plaintiffs and defendants, for the sale and purchase of the 200 barrels of wines, the plaintiffs are remediless. The directions by the defendants to Wood to ship the 100 barrels to their consignee, did not oblige him to

waive his lien upon the property for the unpaid purchase-price and ship the wines, nor does it appear that he complied with the directions to ship. On the contrary, so far as the findings of fact show, the goods remained under his control several days after the directions to ship, and, for ought that appears, until after they were sold at auction in pursuance of the plaintiffs' notice. What would have been the effect of shipping them as directed by the defendants, is not now necessary to be considered. It is enough that there was no vesting of the possession of those wines in the defendants, " as the absolute owners, discharged of all lien for the price " on the part of Wood. To take the case out of the statute, "the acts of the parties must have been of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer." (*Shindler* v. *Houston*, 1 N. Y., 261, 269, 270 ; *Rodgers and others* v. *Phillips & Oakley*, 40 N. Y., 519.) Such not being the case, it is unnecessary to examine the other grounds of defence. The judgment appealed from should be affirmed.

All for affirmance.

Judgment affirmed, with costs.