[Civ. No. 4275.  First Appellate District, Division One.—November 2, 1922.]

## GOLDEN EAGLE MILLING COMPANY (a Corporation), Appellant, v. OLD HOMESTEAD BAKERY (a Corporation), Respondent.

[1] SALES—AGREEMENT TO MANUFACTURE FLOUR—STATUTE OF FRAUDS. An oral agreement to buy flour, to be manufactured according to the seller's own formula and for the general market, is not an agreement to manufacture, coming under section 1740 of the Civil Code, but is an agreement of sale within the statute of frauds.

[2] ID.—REPUDIATION OF ORDER—ACCEPTANCE OF PART OF GOODS AT REDUCED PRICE—NECESSITY OF WRITING SIGNED BY BUYER.—The seller having delivered a small portion of the flour thus contracted to be purchased, but the buyer having refused to pay for it at the price named in the order, the trial court was justified in finding that such refusal constituted a repudiation of the entire original order and that the acceptance of such portion of the flour and the payment therefor at a lesser price than that specified in the original order did not constitute such delivery and acceptance of a part of the flour as would obviate the necessity of a writing signed by the buyer.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fred S. Howell for Appellant.

John O'Donnell for Respondent.

KERRIGAN, J.—Action to recover the sum of $3,234 damages for the breach of a contract to receive and pay for one thousand barrels of barley flour sold to the defendant at the agreed price of $11.30 per barrel, only twenty barrels of which were accepted and paid for, the remainder refused, and sold by the plaintiff in the nearest market at the best price obtainable, the price thus realized being less than the contract price by the said sum of $3,234.

The plaintiff is a corporation engaged in the manufacture of flour and feed. The defendant is a corporation engaged

in the bakery business. On September 11, 1918, the plaintiff, through its salesman, Howe, sold to the defendant, through its agent and officer, Banzaf, one thousand barrels of barley flour, to be ground from barley, sample of which had been previously furnished to the defendant, at the price of $11.75 per barrel. It was known to the defendant that the flour was not yet manufactured. While the particular brand and quality of flour so sold was not kept in stock by the plaintiff, it was manufactured according to its own formula and was sold to other customers than the defendant. The sale was effected by telephone conversation between Howe and Banzaf. The former entered the order in his memorandum book and on the same day wrote a letter to the defendant confirming the order. No reply to this letter was received. A few days thereafter the manager of the plaintiff acknowledged the receipt of the order in a letter also dealing with other matters, but received no reply to this letter, although it is admitted that the letter was received by the defendant.

About November 10, 1918, the plaintiff shipped to the defendant twenty barrels of barley flour on account of this order, they going forward as a part of a larger shipment furnished in fulfillment of a previous order. Invoices for the entire shipment were sent to the defendant, the twenty barrels being charged at $11.75 per barrel, and the remainder at $11.30. Mr. Banzaf, upon observing this, called the plaintiff by telephone to inquire the reason for the difference, and was then informed that the twenty barrels was part of defendant's order for one thousand barrels given at the price of $11.75 per barrel, whereas the remainder constituted part of a previous order given at a lower price. Banzaf at this time informed the plaintiff that he had no recollection of giving this order for one thousand, and refused to pay more for the twenty barrels than it had been theretofore paying for the same brand and quality of flour. The plaintiff, through its manager, thereupon agreed to reduce the price to $11.30—the old price—and the defendant received and retained the twenty barrels and paid therefor at said reduced rate. Thereafter in due time the plaintiff tendered the remaining 980 barrels, but the defendant refused to accept or pay for the same.

The evidence offered by the plaintiff as to the whole transaction was objected to by the defendant upon the ground that the contract being one for the sale of goods and chattels at a price of $200 and over was invalid if not in writing signed by the defendant, and that the parol evidence offered by the plaintiff for the purpose of establishing it was incompetent. The evidence was admitted by the court, subject to a motion to strike it out in the event that the plaintiff's evidence did not take the contract out of the operation of the statute of frauds. This the plaintiff endeavored to do by proof of the receipt and acceptance by the defendant of the aforementioned twenty barrels. At the conclusion of the evidence the motion to strike out was renewed by the defendant and granted. Thereupon the defendant moved for a nonsuit, which also was granted, and the plaintiff's motion for a new trial being also denied, was followed by judgment in favor of the defendant, dismissing the action.

The plaintiff appeals and makes two points for the reversal of the judgment, namely: that the contract in question was not a sale of personal property within the meaning of the statute requiring it to be in writing, but comes within the provisions of section 1740 of the Civil Code relating to agreements to manufacture; and, second, that even if it be held to be a sale of personal property there was a delivery and acceptance of part of the goods, the effect of which was to dispense with the necessity of a writing signed by the defendant.

[1] There has been considerable diversity of opinion as to whether a contract, although in terms a sale, comes within the statute of frauds requiring it to be evidenced by a writing, if the goods purporting to be sold are not yet in existence and are to be thereafter manufactured by the vendor; and in a number of early cases in the state of New York it was held that such contracts are not within the statute. Thus it was held that a sale of flour to be thereafter milled was a contract to manufacture rather than a sale (*Bronson* v. *Wiman,* 10 Barb. (N. Y.) 406); similarly of a contract to deliver monthly thereafter during a certain period a number of barrels of beer not yet brewed (*Donovan* v. *Willson,* 26 Barb. (N. Y.), 138). Later cases have not followed that rule, but have adopted the rule fol-

lowed in other states holding such a contract to be a sale within the statute of frauds; and that in order to be classed as an agreement to manufacture, the article must be made for the vendee according to his special design or requirements, so that when made it would not be suitable for the general trade of the vendor. The general question is discussed at length in case of *In re Gies' Estate,* 160 Mich. 502 [19 Ann. Cas. 1288, 30 L. R. A. (N. S.) 318, 125 N. W. 420]. The supreme court of Michigan, after reviewing a number of cases decided in various jurisdictions, said: " 'The effect of these decisions we understand to be this, namely: that a contract for the sale of articles then existing, or such as the vendor, in the ordinary course of his business, manufactures or procures for the general market whether on hand at the time or not, is a contract for the sale of goods, to which the statute applies. But, on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute. (*Spencer* v. *Cone,* 1 Met. (Mass.) 283). "The distinction," says Chief Justice Shaw, in *Lamb* v. *Crafts,* 12 Met. (Mass.) 353, "we believe is now well understood. When a person stipulates for the future sale of articles which he is habitually making, and which at the time are not made or finished, it is essentially a contract of sale, and not a contract for labor; otherwise when the article is made pursuant to the agreement." In *Gardner* v. *Joy,* 9 Met. (Mass.) 177, a contract to buy a certain number of boxes of candles at a fixed rate per pound, which the vendor said he would manufacture and deliver in about three months, was held to be a contract of sale and within the statute. To the same general effect are *Waterman* v. *Meigs,* 4 Cush. (Mass.) 497, and *Clark* v. *Nichols,* 107 Mass. 547. It is true that in "the infinitely various shades of different contracts" there is some practical difficulty in disposing of the questions that arise under that section of the statute. (Gen. Stats. 1860, c. 105, sec. 5.) But we see no ground for holding that there is any uncertainty in the rule itself. On the contrary its correctness and justice are clearly implied or expressly affirmed in all of our decisions upon the subject matter. . . . ' An instructive case is *Roubicek & Zobel* v. *Haddad,* 67 N. J. L. 522 [51 Atl. 938]. The contract was a New York contract, and the

rule in that state was applied. A defendant, who was doing a retail trade in Atlantic City, New Jersey, ordered from the plaintiffs, who were importers and manufacturers of Bohemian glass novelties, etc., in New York city, an assortment of watch cases and cologne articles, to be thereafter manufactured in Europe, with the words 'Atlantic City' thereon, for the special use of defendant's trade; and it was held, following the decisions of the state of New York, that this was not a contract of sale, but for work, labor and materials, and hence not a contract within the statute. After stating the New York rule the court said: 'It should be stated, however, that the courts of the state of New York have more recently shown a disposition to qualify the rule thus stated to some extent, and to make it conform more closely to the rule as adopted in the later English and American cases. Thus, in *Passaic Mfg. Co.* v. *Hoffman,* 3 Daly (N. Y.), 495, it is held that if the article to be manufactured to fill the order under the contract was one that was manufactured and supplied to the trade generally, it would be a sale within the statute; but if it was one specially manufactured for the trade of the person ordering it, then the contract would be one for work and labor, and not within the statute.' "

In this state the question was touched upon in the case of *Flynn* v. *Dougherty,* 91 Cal. 669, 671 [14 L. R. A. 230, 27 Pac. 1080], and the contract there held to be one of manufacture coming under section 1740 of the Civil Code, but the facts of that case were such as to clearly exclude it from the operation of the statute of frauds. The court, however, in that case seems to accept the so-called Massachusetts rule as having the weight of authority, and we think the present case comes clearly within that rule. It cannot be fairly said that the plaintiff in the case at bar manufactured the flour specially for the defendant and that it was not an article suitable for its general trade. The fact that the plaintiff, owing to the uncertainty of the demand for this particular flour, took the precaution of procuring orders before milling it makes no essential difference. It had bought a quantity of barley sufficient to make 3,000 barrels of flour, and its salesman was soliciting orders for the sale of this quantity, and sold to the defendant 1,000 barrels thereof. It was an article manufactured by the

plaintiff according to its own formula and for the general market; and if in the present instance the armistice of November 11, 1918, had not intervened the plaintiff could have readily disposed of the flour to other customers. We conclude that the trial court correctly held the contract in question to be a sale within the statute of frauds.

[2] By its ruling on the motion to strike out the evidence the trial court also held that the transaction by which the defendant accepted the twenty barrels constituting part of a larger shipment, the remainder of the shipment being the completion of a previous order, was not such acceptance of part of the goods as to obviate the necessity of a writing signed by the defendant. The trial court took the view that the defendant's refusal to pay for these 20 barrels at the price named in the order was in effect a repudiation of the order, and that its consent to retain them and pay for them at a reduced price could not be construed as an acceptance under the terms of the original order. As an inference to this effect might well be drawn from the testimony, it follows that the lack of a writing signed by the party to be charged was not cured by its retention of the 20 barrels, and the trial court was, therefore, justified in its ruling striking out the evidence. The ruling of the court to this effect left the record in such condition that it could not do otherwise than grant the defendant's motion for a nonsuit.

It results from the foregoing that the judgment should be affirmed, and it is so ordered.

Tyler, P. J., and St. Sure, J., *pro tem.,* concurred.