John Thallon & Co. Inc., Respondent, v. Edsil Trading Corp., Appellant.

Argued January 3, 1951; decided April 12, 1951.

*Bruce Bromley, Bertram Sommer* and *Maurice Rosenberg* for appellant. I. The oral contract sued upon is unenforcible under the Statute of Frauds. (*Shindler* v. *Houston,* 1 N. Y. 261.) II. The buyer's part performance must be solely referable to the claimed oral contract. (*Organ* v. *Stewart,* 60 N. Y. 413; *Samuel & Sons, Inc.,* v. *Cutler,* 185 N. Y. S. 368; *Brister & Koester Lbr. Corp.* v. *American Lbr. Corp.,* 356 Pa. 33; *Tanner* v. *Childers,* 160 P. 2d 965 [Utah]; *Howland* v. *Iron Fireman Mfg. Co.,* 213 P. 2d. 177 [Ore.]; *Golden Eagle Milling Co.* v. *Old Homestead Bakery,* 211 P. 56 [Cal.].) III. The buyer's actions must point solely to his affirmation and performance of the claimed oral contract. (*Howland* v. *Iron Fireman Mfg. Co.,* 215 P. 2d 380 [Ore.].) IV. The record herein establishes beyond doubt that defendant's receipt and payment were neither on account of the claimed oral contract nor in affirmation of it. (*Golden Eagle Milling Co.* v. *Old Homestead Bakery,* 211 P. 56 [Cal.]; *Gorden* v. *Witty,* 198 App. Div. 333; *Young* v. *Ingalsbe,* 208 N. Y. 503.) V. Assuming the parties entered into an oral contract prior to making the written agreements in evidence, the parol evidence rule forbids enforcing it. (*Fogelson* v. *Rackfay Constr. Co.,* 300 N. Y. 334; *William H. Waters, Inc.,* v. *March,* 240 App. Div. 120; *Lee* v. *Industrial Laundry Mach. Co.,* 261 App. Div. 741; *Higgs* v. *de Maziroff,* 263 N. Y. 473; *Mitchill* v. *Lath,* 247 N. Y. 377; *Engelhorn* v. *Reitlinger,* 122 N. Y. 76.)

*Myron Kommel* for respondent. I. The Statute of Frauds does not avail defendant. (*Matter of Exeter Mfg. Co. [Marrus]*, 254 App. Div. 496; *Widmeyer v. Crane*, 121 Misc. 309; *Gorden v. Witty*, 198 App. Div. 333; *Hunter v. Wetsell*, 84 N. Y. 549; *Murphy v. Chichetto*, 79 N. E. 2d 898 [Mass.]; *Segall v. Finlay*, 245 N. Y. 61; *Jones v. Reynolds*, 120 N. Y. 213; *Murray v. Cunard S. S. Co.*, 235 N. Y. 162; *Matter of Japan Cotton Trading Co. v. Farber*, 233 App. Div. 354.) II. The parol evidence rule was not violated. (*Seitz v. Brewers' Refrig. Mach. Co.*, 141 U. S. 510; *Friedman & Co. v. Newman*, 255 N. Y. 340.)

DESMOND, J. The question here is: did acceptance and receipt of, and payment for, part of the goods covered by the oral contract of sale, make that sale enforcible under the Statute of Frauds (Personal Property Law, § 85), when the buyer (defendant) had declared before such acceptance and payment that it would not take the balance of the merchandise? Our answer is in the affirmative. Agreeing with the Trial Term and the Appellate Division, we hold that defendant's unilateral denunciation, or anticipatory breach, as to one part of the goods, could not forestall or destroy the effect assigned by the statute itself to what defendant later did: that is, receive and pay for part of the lard which was the subject matter of the single oral agreement of purchase and sale. The Statute of Frauds says that such a contract shall not be enforcible " unless the buyer shall accept part of the goods * * * so contracted to be sold * * * and actually receive the same, or give something * * * in part payment ". We know of no authority or justification for the courts adding another condition: that partial acceptance or partial payment will fail to accomplish enforcibility if, before accepting or paying, the buyer announces that he will take and pay for only the part which he does later accept. Here the buyer's acts, of taking and paying, produced, of and by themselves, the result mandated by the statute. Its previous declaration (that it would not take the rest) was of no consequence except as proof of an anticipatory breach.

The present suit was brought to recover damages for that anticipatory breach. Plaintiff alleged an oral agreement by defendant to buy 440,000 pounds of lard, a taking of, and

payment for, 240,000 pounds thereof, and a breach as to the balance. Defendant, besides pleading the Statute of Frauds as a defense, pleaded, and testified to, an entirely different kind of transaction whereby, according to defendant's version it had agreed to (and did) take and pay for not 440,000, but 240,000 pounds only. But that question of fact, as to what the parties did agree to, was settled by the findings of the Trial Justice (the parties waived a jury), and the affirmance by the Appellate Division, and it was the only dispute of fact in the case. The parties agreed on the trial that 240,000 pounds had been deliberately taken and paid for, so there was no issue as to that. And there is no problem here (such as in many of the reported cases, see *Burns* v. *McCormick*, 233 N. Y. 230, 234), as to whether the partial performance was "solely and unequivocally referable" to the contract found by the trial court to have been made, since no one here claimed that there was more than one contract or deal between the parties, or that the sole agreement between them had been modified or cancelled by them. So we have a contract for 440,000 pounds, and delivery, acceptance and payment as to 240,000 pounds thereof. Inexorably, the statute creates the legal result: enforcibility of a treaty which, though not illegal (*Crane* v. *Powell*, 139 N. Y. 379, 384), would, absent such part performance, have gone unenforced for lack of a writing.

There are many decisions of this court which say, in one form or another that, for enforcibility of a contract to sell goods worth more than $50, there must be either a writing or acceptance and receipt of part of the goods, or part payment of the purchase money. In the first volume of our reports is *Shindler* v. *Houston* (1 N. Y. 261) where each of three Judges expressed the same thought, and each with simple clarity. Judge BRONSON wrote (p. 266): "A writing must be made, part of the purchase money must be paid, or the buyer must accept and receive part of the goods." Judge WRIGHT's words were (p. 267): "There being no note or memorandum made in writing, of the contract or earnest paid, this is a case within the statute of frauds, unless there was an acceptance and receipt of the whole or a part of the property by the buyer." Judge GARDINER agreed (p. 263) that the statute voided the contract "unless the buyer 'accepted and received' the whole or

a part of the property sold.'' Other clear and unequivocal statements of the same rule are found in *Brabin* v. *Hyde* (32 N. Y. 519, 522); *Rodgers* v. *Phillips* (40 N. Y. 519, 523, 524); *Brand* v. *Focht* (3 Keyes 409, 410); *Marsh* v. *Rouse* (44 N. Y. 643, 647); *Stone* v. *Browning* (51 N. Y. 211, 215); *Van Woert* v. *Albany & Susquehanna R. R. Co.* (67 N. Y. 538, 541) and *Young* v. *Ingalsbe* (208 N. Y. 503, 506), (and see Wood on Statute of Frauds, § 320).

The factual dispute (settled below) as to whether defendant agreed to buy 440,000 or 240,000 pounds, must not be confused with the question of law as to whether defendant's conceded taking of 240,000 pounds made the whole contract enforcible. '' It is quite true * * * that the receipt and acceptance by the vendee under a verbal agreement, otherwise void by the statute of frauds, may be complete, although the terms of the contract are in dispute. Receipt and acceptance by some unequivocal act, sufficiently proven to have taken place under some contract of sale, is sufficient to take the case out of the prohibition of the statute, leaving the jury to ascertain and find from the testimony what terms of sale were actually agreed on. * * * ' The statute does not mean that the thing which is to dispense with the writing is to take the place of all the terms of the contract, but that the acceptance is to establish the broad fact of the relation of vendor and vendee ' '' (*Hinchman* v. *Lincoln,* 124 U. S. 38, 54–55, and see, to the same effect, Wood on Statute of Frauds, § 334, and cases there cited).

We find no New York case exactly in point here, except *Brock* v. *Knower* (37 Hun 609) decided by the old General Term, Fifth Department, in 1885. There the defendant vendor, delivering part of the merchandise claimed by plaintiff to be covered by an oral sale contract, sent, simultaneously, a letter which the jury construed as an announcement that the rest of the goods would not be made available except at a higher price. Plaintiff, considering this to be a part delivery, and an anticipatory breach as to the balance, sued for damages, and won. The General Term held (p. 613): '' The evidence was sufficient to present the question of fact whether the delivery made was pursuant to and in part performance of the agreement of which that to sell the five cases was a part, and under circumstances which rendered the receipt and acceptance of the three pieces

effectual to validate the agreement." We do find a statement (by way of dictum) in *Gorden* v. *Witty* (198 App. Div. 333, 336) to the effect that part performance, to make an oral contract enforcible, must be "prior to its revocation" (see similar language in *Adams* v. *King*, 68 Okla. 190, 192) but, to be correct at all, that must mean a mutually agreed upon cancellation. No unilateral, self-serving "revocation", could be sufficient to destroy the statutory effect of a partial performance.

Perhaps the reason why none of the numerous Statute of Frauds decisions in this State give direct answer to the contention here made by defendant, is that, from earliest times, in New York, it has been held that acceptance *at any time*, of part of the goods, takes the transaction out of the statute (*McKnight* v. *Dunlop*, 5 N. Y. 537, 542). Of the decisions from other jurisdictions cited in Judge FULD's opinion, no single one upholds appellant's assertion here that its prior announcement of intention not to perform the whole agreement rendered ineffectual its subsequent acceptance of part of the goods. In *Brister & Koester Lbr. Corp.* v. *American Lbr. Corp.* (356 Pa. 33); *Golden Eagle Milling Co.* v. *Old Homestead Bakery* (59 Cal. App. 541) and *Howland* v. *Iron Fireman Mfg. Co.* (188 Ore. 230) the controversy in each instance was as to whether the acceptance was under the oral arrangement sued upon, or under an entirely different and separate agreement described in the testimony; in *Atherton* v. *Newhall* (123 Mass. 141) the undelivered part was destroyed by fire while in the vendor's possession, before the vendee took delivery of the other part. The sole support we have found in the books for the proposition advanced by appellant is a statement in Williston on Sales (Vol. 1, § 94, p. 236), that the statute is not satisfied "if the buyer when taking part declines to take more". But the only cases cited by Professor Williston for that supposed rule are *Atherton* v. *Newhall* (*supra*) obviously a decision made on its own special facts; and *Pratt* v. *Chase* (40 Me. 269) and *Dixon* v. *Yates* (5 B. & Ad. 313) neither of which latter two cases deals in any way with the Statute of Frauds. With the authorities as they are, we would, by reversing here, be adding a new, gratuitous and unnecessary exception to the plain language of the statute.

The judgment should be affirmed, with costs.

FROESSEL, J. (concurring). The courts below have found that defendant agreed to purchase from plaintiff 440,000 pounds of lard. This disposes of the former's contention that it agreed to purchase only 240,000 pounds of lard.

Defendant had signed two written confirmation orders for 240,000 pounds, retained the third confirmation order for the last 200,000 pounds signed by plaintiff, and exhibited to plaintiff's representatives a written application for a letter of credit which " covered 440,000 pounds of lard as one contract." Thereafter, when the price of lard dropped substantially, and discussions between the parties ensued, defendant's attorney informed plaintiff's representative that " unless he was given a release for this 200,000 pounds he was going to advise [his client] not to accept any part of the 440,000 pounds." He was told that plaintiff " couldn't under any circumstances allow any such cancellations, and that [plaintiff] would certainly not sign any release of any nature." Notwithstanding the foregoing, defendant thereupon accepted, received and paid for 240,000 pounds of lard, and the only agreement to which this payment could have been referable is the one which the trial court found was made.

Had defendant refused to take any of the lard, as its lawyer threatened, plaintiff would have had no case; defendant having accepted, received and paid for over half the quantity of lard which it agreed to purchase from plaintiff, the trial court was warranted in finding that defendant had breached or " welshed " on the agreement to purchase 440,000 pounds of lard. If a " buyer shall accept part of the goods * * * contracted to be sold * * * and actually receive the same, or give something * * * in part payment ", as did defendant under the circumstances here disclosed, and can nevertheless escape liability, section 85 of the Personal Property Law would be meaningless.

Inasmuch as the Appellate Division has unanimously affirmed the trial court, we have no alternative but to affirm. I concur in Judge DESMOND's opinion for affirmance.

FULD, J. (dissenting). The court's opinion establishes — what no one disputes — that acceptance and receipt of part of the goods orally contracted to be sold satisfies the Statute of

Frauds. It has, however, failed to show how acceptance and receipt of goods may be considered a " part ", and only a " part ", of the larger quantity if the buyer has declared, prior to their receipt, that that is " all " that he is going to take. A brief statement of the facts illumines the problem and demonstrates that the oral agreement remained unenforcible.

On April 10, 1947, plaintiff and defendant entered into an oral agreement for the sale of lard; plaintiff claims that the quantity agree·l upon was 440,000 pounds, defendant, that it was 240,000 poun.ls. Though lard was selling at thirty-three cents a pound when the arrangement was made, the price, it was stipulated, was to be the market quotation on the day that the buyer ordered any designated portion of the total. On April 11th, the buyer concededly instructed the seller to cover 100,000 pounds of the order at the prevailing rate of thirty cents a pound and, on April 16th, an additional 140,000 pounds at twenty-seven cents a pound. Separate confirmations, reflecting each of those transactions, were signed by the buyer on April 16th, and, on that same day, according to the seller, the buyer orally ordered the remaining 200,000 pounds. A further confirmation to cover that order was sent by the seller to the buyer, but the latter never signed it. Accordingly, the signed documents refer only to agreements for the sale of 240,000 pounds, and, concededly, they do not constitute an effective memorandum as to any quantity beyond that amount.

During the ensuing weeks, the price of lard dropped, and on April 30th the buyer announced — and this is the testimony of the seller — that it would not take more than 240,000 pounds, the quantity for which it had signed confirmations. The seller's attempts to persuade the buyer to stand by the alleged oral agreement and accept 440,000 pounds failed, and, by May 10th, the seller acknowledged that it had abandoned all hope of inducing the buyer to go through with such an agreement and concluded that the buyer's disclaimer or revocation was " final ". When the date specified in the documents for delivery of the merchandise — May 18th or May 19th — arrived, the seller delivered and the buyer accepted and received 240,000 pounds and paid for them.

It is solely because of that act that the buyer has been **held in damages for repudiating his " obligation " to accept and pay**

for the balance of the goods. What, though, was the buyer to do? It had signed memoranda, in the form of written confirmations, covering 240,000 pounds, and, when the delivery date arrived, it received and paid for that amount. Had the buyer not done so, the seller could have demanded and received damages for the buyer's default as to that quantity. Certainly, the mere circumstance that the buyer took 240,000 pounds, and thereby did only that which it was under a legal duty to do, should not be deemed a basis for subjecting it to heavier damages than would have been possible if it had actually breached its conceded and never disputed obligation and taken no lard whatsoever. The illogic of the court's contrary conclusion is evident: a memorandum of one agreement is permitted to serve as voucher for an entirely different agreement because the bargain embodied in the writing is performed according to its terms; a memorandum for 240,000 pounds becomes a lever for collecting damages for breach of a 440,000 pound contract.

It is no answer to say as does a majority of the court, that the buyer's complaint is foreclosed because the trial judge found that the parties entered into an oral agreement for 440,000 pounds and disbelieved the buyer's testimony to the contrary. It is precisely against that risk of disbelief that the Statute of Frauds is directed.

The statute, insofar as here pertinent, provides that a party who would enforce an oral agreement for the sale of goods worth $50 or more must prove that the buyer accepted "part of the goods * * * so contracted to be sold" and actually received them or gave " something * * * in part payment " (Personal Property Law, § 85). Absent one of the validating acts specified, in other words, unless and until the statute has been satisfied in one of the ways enumerated, the oral agreement is unenforcible and " the defendant may withdraw without liability." (1 Williston on Sales [Rev. ed., 1948], § 73, p. 199.)

Dispute early arose as to the precise nature of the requisite acts of part performance generally, and, more than a century ago, this court laid down the rule that the statute " is not satisfied with any thing but *unequivocal* acts of the parties " (emphasis supplied). (*Shindler* v. *Houston,* 1 N. Y. 261, 269.) That pronouncement remains our guide, whether there is involved

the sale of real or personal property. (See *Roberts* v. *Fulmer,* 301 N. Y. 277, 281; *Maher* v. *Randolph,* 275 N. Y. 80, 84; *Burns* v. *McCormick,* 233 N. Y. 230, 234; *Woolley* v. *Stewart,* 222 N. Y. 347, 351; *Young* v. *Ingalsbe,* 208 N. Y. 503, 506.) The statute's underlying purpose is to avoid the '' peril of perjury and error * * * latent in the spoken promise '' (*Burns* v. *McCormick, supra,* 233 N. Y. 230, 234; see, also, *Maher* v. *Randolph, supra,* 275 N. Y. 80, 84), and that purpose can be effectuated only if the evidentiary acts relied upon are mutually '' confirmatory '' of the oral contract sought to be validated, and are done '' upon the strength of the agreement '' (*Young* v. *Ingalsbe, supra,* 208 N. Y. 503, 506) and '' under the contract and prior to its revocation.'' (*Gorden* v. *Witty,* 198 App. Div. 333, 336; see, also, *Good* v. *Curtiss,* 31 How. Prac. 4, 11.) Were the rule otherwise, either party would be able to '' create the evidence * * * [to] prove the unwritten contract as against the other.'' (*Young* v. *Ingalsbe, supra,* 208 N. Y. 503, 507.)

In the light of these principles, '' it is essential in order to make acceptance and receipt of part suffice, that the part be accepted and received as part and as only a part of the goods.'' (1 Williston on Sales, *op cit.,* § 94, pp. 235–236.) If, when the purchaser receives *some* goods from the seller, he announces that that is '' all '' that he is going to take, he is not accepting and receiving those goods as '' part '' of any larger quantity. And what reason and logic suggest is confirmed by decisions throughout the country and by statements of outstanding authorities; not only must it be shown that the acceptance and receipt are of '' part '' of the goods contracted to be sold, but it must also appear that the buyer '' acknowledged the existence of the alleged contract and that what was done * * * was done solely with a view to its performance.'' (*Howland* v. *Iron Fireman Mfg. Co.,* 188 Ore. 230, 323; see, also, *Golden Eagle Milling Co.* v. *Old Homestead Bakery,* 59 Cal. App. 541; *Atherton* v. *Newhall,* 123 Mass. 141; *Brister & Koester Lbr. Corp.* v. *American Lbr. Corp.,* 356 Pa. 33; 1 Williston on Sales, *op. cit.,* § 94, pp. 235–236; 1 Reed, Statute of Frauds, § 261, pp. 403–404.)

Williston has in so many words declared that, '' if the buyer when taking part declines to take more, the statute is not satisfied '' (1 Williston on Sales, *op cit.,* § 94, p. 236), and

another commentator expressing the same thought, has stated that " The acceptance must be with the intention to perform the whole contract ". (1 Reed, Statute of Frauds, *op. cit.*, § 261, p. 404.) The courts, too, have laid stress on the dual requirement that the receipt be of " part " — and only of " part " — and that it bespeak a willingness to perform the alleged oral agreement in full. The rule is well stated in the recent case of *Howland* v. *Iron Fireman Mfg. Co.* (*supra*, 188 Ore. 230), where the Supreme Court of Oregon wrote (pp. 322–323): " The authorities establish the rules that when a party seeks to enforce an oral contract for the sale of goods he must show by a preponderance of the evidence that there was delivery, acceptance, and actual receipt of some part of the goods, or that something was given in earnest to bind the bargain or in part payment. The party relying upon the oral contract must further show that the other party, whether buyer or seller, in the delivery or in the acceptance and receipt * * * acted with reference to and in recognition of the existence of the contract on which action was brought. The evidence must show that the party to be charged, so dealt with the property as to prove *that he acknowledged the existence of the alleged contract and that what was done relative to delivery, acceptance, receipt, etc., was done solely with a view to its performance.*" (Emphasis supplied.) The Pennsylvania case of *Brister & Koester* (*supra*, 356 Pa. 33), is equally plain. The buyer had accepted delivery of two carloads of lumber after he had disavowed the oral agreement. In holding that such acceptance and receipt did not satisfy the statute, the court said that " the goods so accepted must be a part, and *only* a part, of those embraced by the parol contract: Williston, Sales, p. 159. Delivery must be made pursuant to the asserted contract and accepted as being such " (p. 41). And the Massachusetts Supreme Court, in the *Atherton* case (*supra*, 123 Mass. 141), expressly held that acceptance and receipt did not satisfy the statute where the buyer had informed the seller that he was not going to take any more goods than those delivered and " would be responsible only for the part received " (pp. 142–143): " It is unnecessary to consider whether there was a sufficient delivery to complete the sale, because it is

quite clear, upon the authorities, that there was no such acceptance and receipt of part of the goods as would satisfy the statute of frauds.  *  *  *  The acceptance by the buyer * * * of the part brought by the expressman, was not a sufficient acceptance to take the sale of the whole out of the statute, because it appears that it was not with an intention to perform the whole contract and to assert the buyer's ownership under it, but, on the contrary, that he immediately informed the seller's clerk that he would be responsible only for the part received. *Townsend* v. *Hargraves,* 118 Mass. 325, 333. *Remick* v. *Sandford,* 120 Mass. 309.'' The added circumstance in the *Atherton* case that the balance of the goods had previously been destroyed by fire — claimed by the majority to account for the result in that case (opinion, p. 395) — could not possibly have been of any consequence in deciding whether the Statute of Frauds had been satisfied and could not possibly have influenced the court in reaching its decision. The question as to who was to bear the risk of loss is clearly not dependent on whether the agreement was oral or written and is entirely distinct from the question as to the character and sufficiency of acceptance and receipt as an effective substitute for a writing under the statute.  (See, e.g., 2 Corbin on Contracts, § 484, p. 647.)  Indeed, the Massachusetts court, in a case decided but a short time before the *Atherton* decision — and cited approvingly in that opinion — explicitly ruled that the requirement of the statute was met by acceptance and receipt of part of the goods even though the rest had theretofore been destroyed.  (See *Townsend* v. *Hargraves,* 118 Mass. 325.)  As a reading of the two cases makes evident, the distinguishing factor — present in *Atherton,* absent in *Townsend* — was the buyer's declaration that he would not be responsible for any quantity greater than that already received.  And, beyond that, in further refutation of the suggested distinction, the *Atherton* case has been cited as authority for the proposition here advanced by Reed (Statute of Frauds, *op. cit.,* § 261, p. 404, fn. [n]), by Smith (Law of Frauds, p. 803) and by Williston (on Sales, *op cit.,* § 94, p. 236, fn. 2).

The rule of the foregoing decisions was actually recognized in *Brock* v. *Knower* (37 Hun 609), the very case on which the

majority opinion relies (*supra,* p. 394). There, a letter containing an alleged repudiation was — unlike the buyer's disclaimer in this case — equivocal. The General Term simply held (p. 613) that under the circumstances the trial judge had properly left to the jury the question as to whether the letter " amounted to a repudiation " of the agreement sued upon and " was so understood " by the parties (*Brock* Record on Appeal, fol. 96).

The protection of the Statute of Frauds should not be cut down or whittled away by enlarging its exceptions beyond their clear import. Where the buyer simply accepts and receives goods sent to him by the seller, evidence is at hand for concluding that they constitute a " part " of a larger quantity covered by the oral agreement relied upon. However, the probative value of such evidence of acceptance and receipt is nullified when, before or at the time the goods are delivered, the buyer actually asserts that the quantity received is " all " that he is going to take. That is this case, and, accordingly, the court's decision — based as it is solely upon the trial judge's finding that the agreement was for 440,000 pounds — will not stand analysis. Where seller and buyer give discrepant testimony as to the quantity covered by an oral agreement two questions are presented: (1) what amount did the parties agree upon and (2) was there such acceptance and receipt of the goods as to satisfy the statute?[1] A finding that the parties agreed upon 440,000 pounds is manifestly neither the equivalent of, nor a substitute for, a finding, equally vital and significant, that the goods delivered were accepted and received as " part ", and only as " part ", of the larger quantity, in recognition of the existence of the 440,000 pound agreement and with a view to its complete performance. The trial judge did not even pretend to make a finding to that effect, and, indeed, he could not properly have done so, for, as we have already seen, the evidence was indisputably all the other way. Since, therefore, the record establishes, as matter of law and without contradiction, that the 240,000 pounds were not accepted as " part " of any larger

---

[1] The court acknowledges as much when it warns that " The factual dispute (settled below) as to whether defendant agreed to buy 440,000 or 240,000 pounds, must not be confused with the question of law " as to the effect of the buyer's act (*supra,* p. 394).

quantity or as confirmatory of the contract asserted by the seller, the Statute of Frauds was not satisfied and the oral agreement sued upon remained unenforcible.

The judgments should be reversed and the complaint dismissed.

CONWAY, DYE and FROESSEL, JJ., concur in opinion by DESMOND, J.; CONWAY, DESMOND and DYE, JJ., concur in separate opinion by FROESSEL, J.; FULD, J., dissents and votes for reversal and dismissal of the complaint in an opinion in which LOUGHRAN, Ch. J., and LEWIS, J., concur.

Judgment affirmed.

